18330

The STATE, Respondent, v. Aaron SOLOMON, Appellant

(141 S. E. (2d) 818)

552

554

*A. Arthur Rosenblum, Esq.,* of Charleston, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *William L. Pope, Assistant Attorney General,* of Columbia, *for Respondent.*

April 12, 1965.

LEWIS, Justice.

The defendant, Aaron Soloman, has appealed from a conviction of operating his business, known as the Sam Solomon Company, on Sunday in violation of Act No. 850 of the 1962 Acts of the General Assembly, 52 Stat. 2134. The issues to be decided concern the sufficiency of the indictment under which the defendant was convicted, the constitutionality of the foregoing statute, the validity of a city ordinance which the defendant claimed made the operation of his business on Sunday lawful, and alleged error in the charge to the jury. The defendant does not question the sufficiency of the evidence to sustain his conviction.

The testimony describes the defendant as the manager of the Sam Solomon Company, a large general merchandise store on East Bay Street in Charleston, South Carolina. The store covers about a half city block and carries a large variety of items for sale to the consumer. The defendant is an Orthodox Jew and does not open his business on Saturday. Since adherence to his religious beliefs requires that he observe Saturday as the Sabbath, the defendant claims the right to operate his business on all other days of the week including Sunday. On Sunday, May 13, 1962, the defendant was operating his business "as usual" and, at the time

of the visit of the officers to his store, there were approximately forty to sixty customers present with eleven clerks and the defendant on duty. Purchases of various articles were being made by the customers, one particular purchase consisting of two baby chairs (described in the indictment as baby strollers), a ladies slip, and a white shirt. As a result of the operation of his business on May 13, 1962, the defendant was indicted for violating the foregoing statute regulating work on Sunday.

Prior to the adoption of the statute in question, the general statutory prohibition in this State against working on Sunday was contained in Section 64-2 of the 1962 Code of Laws, which provided:

"No tradesman, artificer, workman, laborer or other person whatsoever, shall do or exercise any worldly labor, business, or work of his ordinary calling upon Sunday or any part thereof, work of necessity or charity only excepted, and every person of the age of fifteen years or upwards offending in the premises shall, for every such offense, forfeit the sum of one dollar."

At the 1962 Session of the General Assembly the quoted provisions of Section 64-2 were repealed and, in lieu thereof, a new statute was enacted relating to Sunday work. Act No. 850, *supra*. In view of the broad attack made by the defendant upon its provisions, this statute, with the section numbers under which it appears in the 1964 Supplement of the 1962 Code of Laws, is set forth in full:

"Section 64-2. Unlawful to work on Sunday.—On the first day of the week, commonly called Sunday, it shall be unlawful for any person to engage in worldly work, labor, business of his ordinary calling or the selling or offering to sell, publicly or privately or by telephone, at retail or at wholesale to the consumer any goods, wares or merchandise or to employ others to engage in work, labor, business or selling or offering to sell any goods, wares or merchandise, excepting work of necessity or charity.

"Section 64-2.1. Exceptions to Section 64-2.—Section 64-2 shall not apply to the following: The operation of radio or television stations nor to the publication and distribution of newspapers, nor to the sale of newspapers, books and magazines; nor to the sale or delivery of heating, cooling, refrigerating or motor fuels, oils or gases or the installation of repair parts or accessories for immediate use in connection with motor vehicles, boats, aircrafts or heating, cooling or refrigerating systems; nor to transportation by air, land or water of persons or property; nor to public utilities or sales usual or incidental thereto; nor to the operation of public lodging or eating places (including food caterers) nor to the sale of emergency food needs at open air markets and grocery stores which do not employ more than three persons including the owners or proprietors at any one time; nor to the sale of drugs, medicines, surgical or medical aids, supplies and equipment, or to the sale of cosmetics, toilet articles, or personal health or hygiene supplies and aids; nor to the sale of flowers, plants, seeds and shrubs; nor to the sale of prepared tobaccos, soft drinks, confections, ice cream, ices, novelties, souvenirs, fish bait or swimwear, nor to any farming operations necessary for the preservation of agricultural commodities.

"Section 64-2.2. Sale of certain items on Sunday prohibited.—The sale or offer to sell of the following items on Sunday is prohibited: Clothing and clothing assessories (except those which qualify as swimwear, novelties, or souvenirs); housewares, china, glassware and kitchenware; home, business and office furnishings and appliances; tools, paints, hardware, building supplies and lumber; jewelry, silverware, watches, clocks, cameras (but not including films, batteries and flashbulbs); luggage, musical instruments, recorders, recordings, radios, television sets, phonographs, recordplayers or so-called hi-fi or sterio sets or equipment; sporting goods (except when sold on premises where sporting events and recreational facilities are permitted); yard or piece goods; automobiles, trucks and trailers. No inference

shall arise from the foregoing enumeration that either the sale or the offering for sale on Sunday of items or articles not mentioned is permitted.

"Section 64-2.3. Penalties for violation of Section 64-2. —A violation of any of the provisions of § 64-2 shall be punished by a fine of not less than fifty dollars nor more than two hundred fifty dollars in the case of the first offense, and by a fine of not less than one hundred dollars nor more than five hundred dollars for each and every subsequent offense. Each separate sale, offer or attempt to sell on Sunday, and each Sunday a person is engaged in other work, labor or business is violation of § 64-2, or employs others to be so engaged, shall constitute a separate offense.

"Section 64-2.4. Sunday work declared nuisance; injunction; time off to attend church.—The doing of any worldly work or labor, business of his ordinary calling, or the selling or offering for sale of any goods, wares or merchandise contrary to § 64-2 is declared to be a public nuisance and any State, county or municipal law-enforcement officer may apply to any court of competent jurisdiction for and may obtain an injunction restraining such operation, work, labor, sale or offering for sale. Provided, that any employee in a retail store where there are more than three employees shall upon request of said employee be granted time off to attend service allowing one hour for preparing to go and traveling to church and one hour after service for returning therefrom.

"Section 64-2.5. Section 64-2 to 64-.24 shall not be applicable to or affect the carrying on of any business or the rendering of any service which was lawful on April 7, 1962."

The foregoing statute became effective on April 7, 1962.

At the outset of the trial the defendant moved unsuccessfully to quash the indictment upon the ground that it was insufficient to fully inform him of the nature and cause of the accusation against him, in violation of Article 1, Section 18, of the South Carolina Constitution and the Due Process Clause of the Fourteenth Amendment of the United States

Constitution. The defendant contends that the indictment was fatally deficient in that it (1) failed to negate all of the specific exceptions enumerated in Sections 64-2.1 and 64-2.2 of the statute and (2) did not set forth the particular items allegedly sold or offered for sale nor the name of the consumer to whom the sale or offer to sell was made.

It is well settled that an indictment is sufficient if the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, the defendant to know what he is called upon to answer, and an acquittal or conviction may be pleaded in bar to any subsequent prosecution. *State v. McIntire et al.,* 221 S. C. 504, 71 S. E. (2d) 410.

The offenses under the Sunday closing law are created and defined by Section 64-2. Three separate offenses are created: (1) engaging in worldly work, labor, or business of one's ordinary calling on Sunday; (2) selling or offering to sell, publicly or privately or by telephone, at retail or wholesale to the consumer any goods, wares or merchandise on Sunday; (3) employing others to engage in work, labor, business or selling or offering to sell any goods, wares or merchandise on Sunday. This section excepts "work of necessity or charity" from the foregoing prohibitions, and is followed by Sections 64.2.1 and 64-2.2 which contain a list of permitted activities and sales and a list of merchandise specifically prohibited from sale on Sunday.

The indictment in this case contained two counts. The first charged that the defendant unlawfully engaged on May 13th, 1962, the first day of the week, in worldly work, labor and business of his ordinary calling, not constituting work of necessity or charity, by selling to consumers, at retail or wholesale, goods, wares and merchandise which are not permitted to be sold on the 1st day of the week, in violation of Section 64-2 of the 1962 Code of Laws, as amended.

The second count of the indictment charged that the defendant unlawfully engaged on May 13th, 1962, the first day of the week, in worldly work, labor, and business of his ordinary calling, not a work of necessity or charity, by offering to sell to consumers, at retail or wholesale, consumer goods, wares, and merchandise, including two baby strollers, not permitted to be sold on the first day of the week, in violation of Section 64-2 of the 1962 Code of Laws, as amended.

We think that the indictment charged the offense with sufficient certainty and particularity to apprise the defendant of the nature and cause of the accusation against him. The indictment was phrased in substantially the language of Section 64-2, which created and defined the offense, and an indictment so phrased is ordinarily sufficient. Section 17-402, 1962 Code of Laws; *State v. Jacobs*, 238 S. C. 234, 119 S. E. (2d) 735.

The defendant contends, however, that the indictment should have negated all of the exceptions enumerated in Sections 64-2.1 and 64-2.2, and should have set forth the particular items and the names of the consumers to whom sold or offered for sale. The indictment was not required to negate the foregoing exceptions.

Questions concerning the proper rule to be followed in determining the burden of pleading and proof of exceptions in criminal statutes is the subject of an exhaustive annotation in 153 A. L. R. 1218. See also: 27 Am. Jur., Indictments and Informations, Sections 106 and 107; 42 C. J. S. Indictments and Informations, § 140; and 83 C. J. S., Sunday, § 20. Cases from this jurisdiction dealing with the rule to be followed in pleading such exceptions are: *Reynolds v. State*, 11 S. C. L. (2 Nott & McC.) 365; *State v. Bouknight*, 55 S. C. 353, 33 S. E. 451; and *State v. Freeland*, 106 S. C. 220, 91 S. E. 3.

In the *Reynolds* and *Freeland* cases the following rule was stated: " 'If there is an exception in the enacting clause

(which means here that part of the statute which creates the offense), the party pleading must show that his adversary is not within the exception; but, if there be an exception in a subsequent clause, or subsequent statute, that is matter of defense, and is to be shown by the other party.' "

However, in the *Bouknight* case, decided subsequently to *Reynolds* but prior to *Freeland*, the foregoing rule was criticized and a somewhat different rule followed. The following is from the *Bouknight* case:

"In 10 Ency. of Pl. & Prac. 495, we find the following as to exceptions and provisos in statutes creating criminal offenses: 'The rule usually announced is that exceptions and provisos in the enacting clause of the statute must be negatived, and such as are not in the enacting clause need not be negatived; the latter being merely matters of defense. But while it is undoubtedly true that exceptions which are not in the enacting clause of a statute, as descriptive of the offense, need not be negatived, and those which are in the enacting clause, as descriptive of the offense, must be negatived, the more accurate rule deducible from the authorities is that only such exceptions and provisos need be negatived as are descriptive of the offense, without reference to the position of the exception or proviso.' This statement of the rule is not only supported by a number of cases cited in the notes, but, as it seems to us, is better supported by reason and common sense, and is in accordance with the spirit of the act of 1887, (19 Stat. at Large, p. 829) passèd for the purpose of doing away with purely technical objections to indictments. If, therefore, the language of the exception, found in any part of the statute, must be regarded as descriptive of the offense created by such statute, then such exception must be negatived; but, if it cannot properly be so regarded, then it becomes a matter of defense, and need not be negatived."

The *Bouknight* case rejected the rule that the grammatical position of the exception or proviso in the statute determines whether it must be negatived in the indictment, and followed the rule that, regardless of where

found in the statute, the exception must be plead if regarded as descriptive of the offense. We think the rule adopted in the *Bouknight* case represents the better view.

However, under either of the foregoing rules, the exceptions set forth in Sections 64-2.1 and 64-2.2 were not required to be negated in the indictment. As previously pointed out, the offense under the statute was created and defined by Section 64-2. The exceptions in question are not only contained in subsequent sections of the statute, but clearly form no part of the description of the offense. They constitute matters of defense.

Neither do we think that the indictment was required to allege the names of the consumer or consumers to whom sold. The first count of the indictment charged the defendant with having committed the offense of unlawfully engaging in worldly work or business of his ordinary calling on Sunday, and the second with unlawfully offering to sell merchandise including two baby strollers on Sunday. In the case of a merchant, it is not necessary, in order to charge the offense, to allege that a sale or offer to sell has been made to a particular person. If a merchant opens his store for the purpose of transacting his ordinary business on Sunday, that is, sells or offers his merchandise for sale to the public generally, he violates the statutory prohibition, unless it is shown that it is a work of necessity or charity, or the items sold or offered for sale are specifically permitted by the statute. Whether or not the article sold falls within the statuory exceptions in question is a defensive matter and need not be alleged.

The defendant argues further that, since Section 64-2.3 makes "each separate sale, offer or attempt to sell on Sunday and each Sunday a person is engaged in other work, labor or business in violation of § 64-2, or employs others to be so engaged" a separate offense, the failure of the indictment to specify the articles or the consumer to whom sold made it impossible for him to determine upon what specific act

or acts his prosecution was based, and therefore, deprived him of his right to plead the conviction in bar to any subsequent prosecution. We do not agree.

The indictment in general in character, alleging that the defendant unlawfully operated his business and offered for sale prohibited items on Sunday, May 13, 1962. Although the defendant might have been guilty of several violations of the statute on May 13, 1962, the indictment, because of its general terms and the conviction thereunder, precludes the State from prosecuting the defendant for further violations on that date. The indictment covered, in general terms, violation of the statute on May 13, 1962, and but one conviction can be had against the defendant for the period covered by the indictment. *State v. Van Buren,* 86 S. C. 297, 68 S. E. 568; *Troup v. State,* 83 Ga. App. 151, 63 S. E. (2d) 4.

The final question involving the indictment relates to alleged error on the part of the trial judge in permitting an amendment thereto at the trial by changing references to the seventh day of the week to read the first day of the week. The indictment alleged that the offenses were committed on May 13th, 1962. While the indictment as originally drawn is not printed in the record, it appears that May 13, 1962, was referred to in certain places in the indictment as the seventh day of the week and in others as the first. The court permitted the indictment to be amended so as to uniformly allege that the acts of the defendant occurred on the first day of the week. The defendant contends that this was prejudicial error.

The allowance of the amendment could not have prejudiced any right of the defendant. The indictment plainly alleged that the offense occurred on May 13, 1962, which admittedly fell on the first day of the week. It was so referred to in parts of the indictment. The correction by amendment of a clearly inadvertent reference to that date as the seventh day of the week did not change the

nature of the offense charged and was properly granted. Section 17-410, 1962 Code of Laws.

The defendant has attacked the constitutionality of the statute in question upon several grounds.

The defendant is a member of the Orthodox Jewish faith. His religious faith, to which he adheres, requires he observe Saturday as the Sabbath and close his business on that day.

The defendant's first attack upon the constitutionality of the statute is made upon the ground that it violates the provisions of the First Amendment of the United States Constitution and Article 1, Section 4 of the South Carolina Constitution respecting the establishment of religion and the free exercise thereof. The provisions in both Constitutions are the same and prohibit the making of any law "respecting an establishment of religion, or prohibiting the free exercise thereof." The argument is, in general, that the statute in question has for its purpose the setting aside of Sunday in furtherance of the religious beliefs of the predominant Christian sects, and discriminates against Sabbatarians in that an economic burden is placed upon them by the observance of their religious beliefs, since they must now close their businesses two days out of the week, one because of their religious beliefs and the other under compulsion of the statute; while non-Sabbatarians by virtue of the statutory designation of Sunday as the closing date will only be required to close one day out of the week.

The answer to the foregoing argument lies in the fact that the purpose of the legislation is not religious but to provide a uniform day of rest for all citizens, permitting only work of necessity or charity. The statute was enacted, as declared in the preamble thereto, pursuant to the legislative finding and purpose that "social, economic and other factors have made increasingly apparent the need for a more equitable and uniform method of securing the observance of a day of rest in South Carolina;" that "it is in the interest of the moral, physical and mental health and

the public welfare of the citizens of South Carolina that a uniform day of rest, in so far as practical, be observed;" that more severe penalties are required to promote compliance with the laws relating to work on Sunday; and that "some of the present statutory provisions for such day of rest are outmoded and should be amended in the light to present-day conditions and activities to clarify specifically some of the businesses or commercial operations which are recognized as a necessity or accepted as essential to our present way of life, and to permit, but to restrict to a reasonable degree, the operation of certain businesses or types of commerce so as to provide a uniform day of rest for the greatest number of persons."

The declared legislative purpose in enacting the legislation is secular, not religious. The terms and effect of the statute conform to the legislative declaration. We find, after a careful review of its provisions, that the purpose and effect of the statute is not to aid religion but to set aside a uniform day of rest in furtherance of the State's legitimate concern for the improvement of the health and general well-being of its citizens.

Nor is the foregoing purpose and effect changed because the statute provides in Section 64-2.4 that any employee, who works in a retail store where there are more than three employees, shall be granted, upon his request, time off to attend church services. It in no way affects or changes the secular purpose of the statute. There is no penalty provided for its violation, and it does not require or prohibit church attendance. The provision simply attempts to afford to employees who work in certain lawful businesses on Sunday the opportunity, if they so desire, to attend church services. This certainly abridges no right of the defendant to the free exercise of his religious beliefs.

Assuming, however, the unconstitutionality of the foregoing provision relating to church attendance, it is clearly a separable provision, and its invalidity

would not in any way affect the enforceability of the remaining portions of the statute because of the "saving clause" which provides that "if any part of this act shall be held unconstitutional such unconstitutionality shall not affect the remainder of this act."

Since the statute, enacted under the police power of the State, serves a strong state interest in providing one uniform day of rest for its citizens, it does not violate the Constitutional provisions respecting the establishment of religion or the free exercise thereof. *Carolina Amusement Co. v. Martin*, 236 S. C. 558, 115 S. E. (2d) 273; *McGowan v. State of Maryland*, 366 U. S. 420, 81 S. Ct. 1101, 6 L. Ed. (2d) 393; *Gallagher v. Crown Kosher Super Market*, 366 U. S. 617, 81 S. Ct. 1122, 6 L. Ed. (2d) 536; *Two Guys from Harrison-Allentown v. McGinley*, 366 U. S. 582, 81S. Ct. 1135, 6 L. Ed. (2d) 551. *Braunfeld v. Brown*, 366 U. S. 599, 81 S. Ct. 1144, 6 L. Ed. (2d) 563.

*Sherbert v. Verner*, 374 U. S. 398, 83 S. Ct. 1790, 10 L. Ed. (2d) 965, does not, as defendant contends, require a different conclusion. There the United States Supreme Court held that the application of South Carolina's Unemployment Compensation Law had the effect of excluding persons of certain religious beliefs from its benefits. The majority opinion, in differentiating between that case and its prior decision in *Braunfeld v. Brown, supra,* stated:

"In these respects, then, the state interest asserted in the present case is wholly dissimilar to the interests which were found to justify the less direct burden upon religious practices in *Braunfeld v. Brown, supra*. The Court recognized that the Sunday closing law which that decision sustained undoubtedly served 'to make the practice of (the Orthodox Jewish merchants') * * * religious beliefs more expensive', 366 U. S., at 605 [81 S. Ct., at 1147]. But the statute was nevertheless saved by a countervailing factor which finds no equivalent in the instant case—a strong state interest in providing one uniform day of rest for

all workers. That secular objective could be achieved, the Court found, only by declaring Sunday to be that day of rest. Requiring exemptions for Sabbatarians, while theoretically possible, appeared to present an administrative problem of such magnitude, or to afford the exempted class so great a competitive advantage, that such a requirement would have rendered the entire statutory scheme unworkable. In the present case no such justifications underlie the determination of the state court that appellant's religion makes her ineligible to receive benefits."

The defendant next asserts that certain provisions of the statute are so vague as to provide no reasonably ascertainable standards by which guilt may be determined and, therefore, violate the Due Process Clause of the Federal and State Constitutions. The Constitutional attack for vagueness is directed primarily to the exception from Section 64-2 of "work of necessity" and the exception of "novelties or souvenirs" from the list of articles specifically prohibited from sale in Section 64-2.2.

The broad general principles governing a determination of whether a criminal statute is unconstitutionally vague are well settled.

In *Connally v. General Construction Company*, 269 ■ U. S. 385, 46 S. Ct. 126, 70 L. Ed. 322, it was stated that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

However, the fact that various considerations might ■ ■ enter into the determination of whether conduct falls within the statutory prohibition, or "that there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense." *United States v. Petrillo*, 332

U. S. 1, 67 S. Ct. 1538, 91 L. Ed. 1877. Quoting from *Petrillo,* the court, in *Roth v. United States,* 354 U. S. 476, 77 S. Ct. 1304, 1 L. Ed. (2d) 1498, stated: "The Constitution does not require impossible standards; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices."

In our view the term "work of necessity" meets the test of constitutionality. Work of necessity has been excepted in this State from the statuory prohibition of Sunday work at least since 1691, *Mullis v. Celanese Corp. of America,* 234 S. C. 380, 108 S. E. (2d) 547; and the term has been construed in prior decisions of this court, *State v. James,* 81 S. C. 197, 62 S. E. 214, 18 L. R. A., N. S., 617; *Oliveros v. Henderson,* 116 S. C. 77, 106 S. E. 855; *Charleston Oil Co. v. Poulnot,* 143 S. C. 283, 141 S. E. 454, 60 A. L. R. 750. Also, as pointed out in the concurring opinion in *McGowan v. State of Maryland, supra,* similar exceptions appear in a majority of the state statutes dealing with Sunday closing.

We have recognized that necessity is an elastic term and that it is impossible to state with exactness the degree or inconvenience which would amount to necessity because of the various factors that might be considered in determining the question. Our decisions have held that a work of necessity means labor reasonably necessary for the worker to perform to save himself from some unforeseen or irreparable injury or loss, or necessary for the welfare of the community in which he resides, viewed in the light of the facts and circumstances existing at the time. It does not mean that which is indispensable, but it means something more than that which is merely needful or desirable. *State v. James* and *Charleston Oil Co. v. Poulnot, supra.*

Under the statute, one is not left to guess as to the prohibited conduct. Section 64-2 prohibits all Sunday labor

*except* work of necessity and gives plain notice that all Sunday labor is prohibited unless it falls within that exception.

It is true that various factors may enter into the determination of what is a work of necessity. This, however, does not render the statute unconstitutional for vagueness. As stated in *United States v. Petrillo, supra:* "* * * the same thing may be said about most questions which must be submitted to a fact-finding tribunal in order to enforce statutes."

In the light of the long history of these provisions and the common understanding and practices with reference to work of necessity on Sunday, we think that reasonable men seeking to obey the law will know and are sufficiently warned of what conduct the statute makes criminal. Cases touching the subject may be found in the annotation at 91 A. L. R. (2d) 763.

Next, the defendant asserts that the exemption in Section 64-2.2 of "novelties or souvenirs" is unconstitutionally vague. We do not agree. "Novelties" and "souvenirs" are terms of common usage in the business world and business people of ordinary intelligence in the position of the defendant would be able to know what exceptions are meant by the terms, either as a matter of ordinary commercial knowledge or upon reasonable investigation. Under such circumstances, there is no necessity to guess at the statute's meaning in order to determine what conduct it makes criminal. *McGowan v. State of Maryland* and *Two Guys from Harrison-Allentown v. McGinley, supra.*

It is next argued that the statute violates the Equal Protection Clause of the United States and South Carolina Constitutions. First, the defendant contends that the classifications of conduct and sales permitted on Sunday are so arbitrary as to bear no rational and substantial relation to the object of the legislation. Like attack was made upon similar Sunday closing statutes, and rejected, in

*McGowan v. State of Maryland* and *Two Guys from Harrison-Allentown v. McGinley, supra.* The principles governing the determination of the question were stated in McGowen as follows: "Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

The statute contains a general ban on all work on ██ ██ Sunday except work of necessity. Following this general provision, there is set forth, as exceptions to, the ban on Sunday work, a special list of permitted pursuits as well as a list of items specially prohibited from Sunday sale. The legislative problem was one of limiting business activity to that necessary to provide for the reasonable needs of the public and at the same time provide a day of rest and relaxation for the most people. Because of the variety of factors which properly enter into any such determination, a wide range of legislative discretion must be allowed. We think that the Legislature could reasonably conclude that the statutory exceptions were necessary in order to supply the reasonable needs of the public and provide at the same time the atmosphere of a day of rest and relaxation.

Therefore, the contention that the classifications bear no rational and substantial relation to the legislative purpose cannot be sustained. There is no proof that the exceptions are not in keeping with the legislative purpose of establishing a day of rest, and such does not conclusively appear from the statute itself.

It is also argued that the statute discriminates be-
██ tween corporations and individuals in violation of the Equal Protection Clause of the Constitution. The

statute imposes criminal responsibility on the person who actually performs the work or sells the prohibited item, but does not apply to corporations. It applies, however, to the entire class of natural persons and directs the same penalties under similar circumstances against all alike. Since corporations act through individuals, it was reasonable for the Legislature to conclude that the prohibitions of the statute could be acomplished by directing criminal responsibility against all persons, which would include those employed by corporations. There can be no doubt that compliance by the class made amenable to the statute would accomplish the legislative purpose. The limitation of the application of the statute to such class is reasonable. 16 Am. Jur. (2d) Constitutional Law, Section 505.

Since the application of the statute to persons and not corporations bears a reasonable and substantial relation to the legislative purpose and applies alike to all within the class, the equal protection clause is not violated. *Xepapas v. Richardson,* 149 S. C. 52, 146 S. E. 686; *State v. Ross,* 185 S. C. 472, 194 S. E. 439.

The defendant next argues that the trial judge erred in refusing to allow him to introduce testimony to show discriminatory enforcement of the Sunday closing law. His basic contention is that there was discriminatory enforcement of the statute such as to deprive him of the equal protection of the law.

While the trial judge excluded from the jury's consideration the testimony relating to alleged discrimination, the defendant was permitted in the absence of the jury to introduce such testimony as he desired upon the issue. The record shows that the present statute became effective on April 7, 1962, and the defendant was arrested for its violation on May 13, 1962. The testimony offered by the defendant showed that on the day of his violation there were others operating their places of business in the same community in violation of the Sunday closing law and were not prosecuted.

The trial judge properly excluded the foregoing testimony from the jury consideration. It had no bearing on defendant's guilt and was irrelevant. One cannot excuse his unlawful conduct by showing that some one else equally guilty has not been prosecuted.

But, assuming the truth of the proffered testimony, it was insufficient to show discriminatory enforcement in violation of the Equal Protection Clause. There was a total absence of testimony to show an arbitrary and purposeful discrimination in the administration of the statute necessary to sustain the claim. *Moss v. Hornig*, 2 Cir., 314 F. (2d) 89; 16 Am. Jur. (2d), Constitutional Law, Sections 540 and 541.

It is next contended that the operation of defendant's business on Sunday was made lawful by an ordinance of the City of Charleston. Section 64-2.5 provides that the prohibitions of the present statute against Sunday work "shall not be applicable to or affect the carrying on of any business or the rendering of any service which was lawful on April 7, 1962," the effective date of the act. The State law, in effect prior to April 7, 1962, has been set forth hereinabove. It made it unlawful for any person to perform any worldly labor, business, or work of his ordinary calling upon Sunday work of necessity or charity only excepted. The City of Charleston had in effect an ordinance which permitted persons, who observed a day other than Sunday as the Sabbath, to operate their usual business on Sunday. It appears that the defendant had been operating his business on Sunday, claiming the right to do so under the provisions of the City ordinance.

The defendant contended at the trial that the operation of his business was lawful prior to April 7, 1962, under the above City ordinance and, therefore, excluded from the prohibitions of the statute by the above provision of Section 64-2.5. The trial judge held that the City ordinance was in direct conflict with the prior State

statute and void for that reason. The effect of his ruling was that the City ordinance could not make legal that which the State statute declared unlawful. We think that the trial judge ruled correctly.

Whether or not the operation of defendant's business on Sunday was lawful prior to April 7, 1962, so as to exempt it under the provisions of Section 64-2.5 from the application of the present statute, depends upon whether the City ordinance permitting the defendant to operate his business was in conflict with the prior State law. It is well settled that where there is a conflict between a State statute and a city ordinance, as where an ordinance permits that which a statute prohibits, the ordinance is void. *Law et al. v. City of Spartanburg,* 148 S. C. 229, 146 S. E. 12; *McAbee v. Southern Ry. Co.,* 166 S. C. 166, 164 S. E. 444; *City of Charleston v. Jenkins,* 243 S. C. 205, 133 S. E. (2d) 242.

The prior statute contained no provision granting to municipalities the right to determine what business or labor was necessary and lawful. The operation of defendant's business was not a work of necessity or charity within the meaning of the prior State statute, and it is not contended otherwise. Since it was not a work of necessity or charity, the operation of defendant's business on Sunday was clearly prohibited by the State law, and the City ordinance declaring it legal was void. Since the City ordinance was in conflict with the State statute, it had no effect on the legal status of defendant's business prior to April 7, 1962, and was properly ruled irrelevant.

The remaining questions concern alleged errors in the charge to the jury.

It is contended that the trial judge erred in the instructions to the jury relative to the burden of proof. The jury was instructed that the burden of proof rested upon the State to prove the guilt of the defendant beyond a reasonable doubt but that, once the State made out a *prima facie* case of selling

or working on Sunday, the ,burden of proof shifted to the defendant to show by the preponderance of the evidence that his business activities on Sunday came within the statutory exceptions.

The foregoing instructions were proper. When the State proved that the defendant engaged in worldly work, labor or business of his ordinary calling on Sunday, a *prima facie* case was made out, which cast upon the defendant the burden of showing, either from cross-examination of the State's witnesses or from testimony of his own, that his work came within the exceptions of the statute. The principle, that the burden is upon the defendant to show that he comes within the statutory exception for work of necessity is clearly recognized in *Charleston Oil Co. v. Poulnot, supra.* The case of *State v. Burns,* 133 S. C. 238, 130 S. E. 641 involved the same principle. It concerned a prosecution under a statute making it unlawful for intoxicating liquors to be stored or kept except under certain conditions. In disposing of the question of the burden of proof, the court stated the applicable principles as follows:

"It is true that a *prima facie* case is made out by the state when it establishes the fact of storing or keeping intoxicating liquor. The statute law makes the storing or keeping unlawful, except under certain conditions. Under the well-settled rule in such cases, if the defendant claims that the storing or possession was not unlawful, because coming within the terms of an exception or proviso in the statute, or because the possession was for specially permitted purposes, or under other circumstances which would relieve him from criminal responsibility, the burden is on him to establish such defense. 33 C. J. 746, Section 483; *State v. Twiggs,* 123 S. C. 47, 101 S. E. 663, 31 A. L. R. 1; *State v. Williams,* 35 S. C. 344, 14 S. E. 819; *State v. Gewing,* 1 McCord 574. But the failure of a defendant to assume that burden by offering evidence to bring himself within the exception does not as a matter of law conclude him or forestall the verdict. It is incumbent upon the state to prove

guilt beyond a reasonable doubt, and upon that general issue the burden remains with the state throughout the trial. 33 C. J. 746, § 499. See *State v. Helms,* 181 N. C. 566, 107 S. E. 228. Upon the issues of fact therefore, as to whether this liquor had been procured in a lawful manner, the defendants had the right to go to the jury upon the state's *prima facie* case and to have all the facts and circumstances considered by the jury; 'they giving such weight to the presumptive evidence (adduced by the state) as they may think it should have under the circumstances.' *State v. Wilkerson,* 164 N. C. 431, 437, 79 S. E. 891."

It is true that the indictment alleges that the work ▪ engaged in by the defendant did not constitute work of necessity or charity. The fact, however, that the indictment alleged the offense in the words of the statute did not alter the foregoing rule as to the burden of proof where, as here, proof of the negative allegation was unnecessary to make out the State's *prima facie* case. *Information against Oliver,* 21 S. C. 318; *State v. Williams,* 35 S. C. 344, 14 S. E. 819.

Exception is also made to the refusal of the trial judge to charge defendant's fourth request to the effect that a person is not prohibited under Section 64-2 from opening his store and selling goods and merchandise therefrom on Sunday (1) where the items sold are specifically excepted from the prohibition of the statute, or (2) where the item sold and the work connected with the selling thereof is a necessity. The court rejected the request and instructed the jury as follows: "The General Assembly of this State has specified and enumerated what articles or goods may be sold on Sunday and if you determine from the evidence that certain items were sold or offered for sale by the defendant on Sunday, you must return a verdict of guilty unless such items are expressly permitted to be sold on Sunday under the statutes I have read to you."

We think that the instruction requested by the defendant was proper and constituted a correct construction of the

statute. The charge as given by the court was erroneous in that it excluded the possibility that the sale of items, other than those specifically enumerated in the statute, might be lawful if sold as a part of a work of necessity. Under Section 64-2, work is permitted on Sunday if it is a work of necessity or charity and, in the case of a merchant, any sale made in connection therewith is lawful if the items sold are necessary to the performance of such work. The enumeration in the statute of certain work which might be performed and specific items which may be sold on Sunday is a legislative declaration that such work and sales, in any event should be considered necessary. So, a proper construction of Section 64-2 permits one to operate his commercial establishment on Sunday (1) if the only items sold or offered for sale are specifically permitted by the statute; or (2), if not enumerated in the statute, the items sold or offered for sale constitute a part of a work of necessity or charity.

While the foregoing instruction was erroneous, it was not prejudicial. The jury's verdict, under the issues submitted, of necessity found that (1) the defendant was not engaged in a work of necessity and (2) was engaged in the sale of items not specifically permitted by the statute. Since the jury found that the defendant was not selling any item enumerated in the statute, the only lawful basis for sale would have been in connection with a work of necessity. The jury also found that the work of the defendant was not one of necessity. In view of such findings by the jury, the sale of the particular merchandise by the defendant could not have been lawful. Therefore, the instruction given by the court could not have prejudiced the defendant because the clear finding by the jury on other basic issues eliminated any issue to which it could have been relevant.

Finally, objection is made to the definition given to the jury of "work of necessity". We find no error in the instructions given in this regard. They were in substantial

accord with the meaning of the term as set forth in this opinion.

All exceptions are overruled and the judgment of the lower court affirmed.

TAYLOR, C. J., and MOSS and BRAILSFORD, JJ., concur.

BUSSEY, J., did not participate.