THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 
 South Carolina
 Department of Health and Environmental Control, Respondent,
 
 
 
 
 

v.

 
 
 
 
 Windy Hill
 Orchard and Cider Mill, Appellant.
 
 
 
 
 

Appeal From Richland County
 Marvin F. Kittrell, Administrative Law Court
Judge

Unpublished Opinion No. 2010-UP-563
 Submitted November 4, 2010  Filed
December 23, 2010    

AFFIRMED AS MODIFIED

 
 
 
 David B. Sample, of Fort Mill, for
 Appellant.
 Matthew Summers Penn, of Columbia, for
 Respondent.
 
 
 

PER CURIAM:  Windy Hill Orchard and Cider Mill, Inc. (Windy Hill) appeals from
 the Administrative Law Court's (ALC) order that required it to cease all food
 preparation, service, and sales, arguing the ALC erred in (1) requiring Windy
 Hill to prove it fell within the permanent food stand exception that would
 exempt it from the requirement to have a retail food establishment permit; (2)
 finding doughnuts constituted a potentially hazardous food, thereby excluding
 Windy Hill from the permanent food stand exception; (3) finding the production
 of doughnuts at Windy Hill's orchard required more than minimal preparation,
 thereby excluding Windy Hill from the permanent food stand exception; (4)
 finding the one-time service of meatballs at a festival met the definition of a
 retail food establishment and did not fall within the permanent food stand
 exception; (5) finding Windy Hill violated Regulation 61-25 for a period of
 forty-eight days when there was no substantial evidence in the record to
 support such a finding; and (6) finding Windy Hill prepared and sold regulated
 foods on twenty-four separate days during 2008, and basing its fine for
 contempt on that number of days when there was no substantial evidence in the
 record to support the finding.  We affirm
 as modified.
FACTS
Windy Hill is an
 agrotourism business in York County, South Carolina.  Windy Hill makes apple
 cider, apple butter, and cider doughnuts; provides educational tours of its
 apple orchard; and allows customers to pick apples for purchase, observe
 cider-making, and visit with farm animals.  Windy Hill also operates a roadside
 market where it sells its cider, apple butter, and cider doughnuts, in addition
 to other items it prepares including popcorn, apple pies, fried apple pies,
 candy apples, pumpkin butter, strawberry butter, and drinks.  During its annual
 Apple Harvest Festival in 2007, Windy Hill also prepared and served meatballs
 coated in its apple-butter barbeque sauce.  Windy Hill's business is seasonal,
 and in 2007, it operated from August to Christmas.
Fred Gusmer,
 founder and chief executive officer of Windy Hill, testified he makes the apple
 cider doughnuts from a dry mix to which he adds water and apple cider, and
 mixes the ingredients in a large mixing bowl.  He then pours the mixture into a
 doughnut hopper that cuts the doughnuts into the frying oil.  After the
 doughnuts are cooked, the conveyor drops the doughnuts onto a carousel to
 cool.  He said about half of the doughnuts are then dipped in cinnamon and sugar. 
 Gusmer estimated they made about thirty-five dozen doughnuts per hour, six days
 a week.  To make Windy Hill's apple butter meatballs, Gusmer testified he purchases
 pre-made, pre-cooked frozen meatballs.  The meatballs are heated in a steam
 kettle with Windy Hill's apple-butter barbeque sauce, and transferred to a crock-pot
 to keep warm until they are served.
Although Windy
 Hill was preparing food at its facility, it did not have a retail food
 establishment permit as required by
 Regulation 61-25 for "any operation that prepares, packages, serves,
 processes, or otherwise provides food for human consumption, either on or off
 the premises, regardless of whether there is a charge for the food."  24A
 S.C. Code Ann. Regs. 61-25(A)(26) (Supp. 2009).  In Fall 2005, Jerlyn Greulich, a South Carolina Department
 of Health and Environmental Control (DHEC) restaurant inspector, testified she
 stopped at Windy Hill because she smelled food cooking as she was driving past
 the business.  She asked Gusmer what he was cooking and if she could see where
 he was cooking it.  Gusmer declined her request, and she left without seeing
 the facility. 
After speaking
 with her supervisor about Windy Hill, Greulich returned to the business on
 November 8, 2006 with her senior inspector.  They asked to speak with the
 owner, but an employee told them he was busy, so they left a card with a
 message for Gusmer to call DHEC.  Greulich again visited Windy Hill on May 17,
 2007 to attend a meeting with Gusmer, an employee from the Department of
 Agriculture (DOA), and Ken Beaty, Greulich's supervisor.  During the visit,
 Greulich was able to inspect the facility and left Gusmer with a list of things
 he needed to do to get his business permitted as a retail food establishment. 
When Gruelich received
 complaints that Windy Hill was making and selling food, she contacted Beaty and
 Bill Phillips, the county supervisor for DHEC.  Phillips told her he spoke to
 someone at Windy Hill who informed him all its food was prepackaged, so a
 permit was not required.  Greulich contacted Beaty again on October 20, 2007,
 after receiving more complaints about Windy Hill, and Beaty observed employees
 cooking doughnuts when he visited the business.  As a result, Beaty asked
 Greulich to write Windy Hill an official notice to stop cooking without a
 permit.  Specifically, DHEC asserted Windy Hill was required to have a permit
 for making its cider doughnuts and meatballs.  Greulich testified Gusmer and
 his wife refused to take or sign the notice. 
Greulich returned
 to Windy Hill with Beaty on October 25, 2007, in response to another
 complaint.  They again observed Windy Hill cooking doughnuts in violation of
 the first notice.  As a result, Greulich wrote Gusmer a second official notice
 to stop making doughnuts without a permit, and the Gusmers again refused to
 sign the notice.  The next day, Gusmer requested a meeting with DHEC to discuss
 the notices.  Greulich testified Gusmer said "he hoped that [DHEC] could
 reduce the damages that [it] . . . were [sic] inflicting against his business
 which had been in operation since 1991," and Gusmer "tried to
 persuade us that he did not need a permit to sell his foods."  Beaty
 testified he twice attempted to give Gusmer a letter explaining the requirement
 to obtain a permit, but Gusmer refused to take it.  Greulich again observed
 Windy Hill making doughnuts on October 29 and 31, 2007.  When Greulich and
 Beaty visited Windy Hill during its Apple Harvest Festival on October 20, 2007,
 they also observed Windy Hill serving meatballs.
Gusmer claimed
 Windy Hill qualified as a permanent food stand; therefore, it was not required
 to obtain a permit.  Tamara Gordon, DHEC Chief Survey Officer,[1] testified a facility must meet two
 requirements to qualify as a permanent food stand: (1) minimal preparation of
 food, and (2) food that is non-potentially hazardous.  She said popcorn,
 candied apples, french fries, and cotton candy are all minimal preparation food
 items.  She explained: 

 There is no preparation to pop [a] corn kernel.  You put it in
 grease and you fry it and you serve it immediately.  You take [a] candied
 apple, you mix sugar and water, again, sugar and water is liking [sic] to
 grease, and is not potentially hazardous.  You take an apple, put a stick in
 it, add coloring over here, no big deal, dip it in, put it aside. . . . The
 French fries, is [sic] from a bag frozen, you have [a] vat of grease, you take
 it and you dump it in the grease and you fry it, and you bring it up and you
 serve it immediately.  The cotton candy is the same way.  You pour sugar into a
 spinning machine and you stick a single-service item in there and you end up
 with [a] fluff ball of spun sugar.

When asked about
 Regulation 61-25, subpart 26(C)(12), Beaty explained DHEC permits facilities
 that make pretzels, but it does not regulate facilities that just warm the
 pretzels, like a stand at a ballgame.  Greulich testified "minimal
 preparation" involved one bowl and one utensil.  Gordon stated anything
 that requires cutting, mixing, or extensive equipment would not qualify as a
 minimal preparation food.  As an example, she explained melting chocolate for a
 mold, and scooping ice cream do not qualify as minimal preparation foods and
 require a permit.  Gordon and Beaty both testified the dry doughnut mix used by
 Gusmer contained egg and dairy products that when rehydrated would become a
 potentially hazardous food.  Gordon stated DHEC has a policy that dry milk
 batter is a potentially hazardous product that must be temperature controlled. 
 Gordon concluded Windy Hill's doughnuts do not qualify as a minimal-preparation
 food, and the doughnut mix is a potentially hazardous product; therefore, Windy
 Hill does not qualify as a permanent food stand and is required to have a
 permit.  Gordon also mentioned Krispy Kreme Doughnuts has a DHEC permit.
DHEC issued an
 administrative order on November 2, 2007, requiring Windy Hill to cease food
 preparation and service, or obtain a permit to operate as a retail food
 establishment pursuant to South Carolina Regulation 61-25.  The order also
 imposed a civil penalty of $5,000 and set penalties for future violations of
 the order at $1,000 per day.  DHEC eventually determined Windy Hill owed $56,000
 in civil penalties. 
Gusmer wrote a
 letter to DHEC requesting a final review, which DHEC denied.  Windy Hill filed
 a request for a contested case hearing before the ALC, challenging DHEC's
 November 2, 2007 order.  After numerous continuances, a hearing was held on
 November 24, 2008.  The ALC filed its order on January 13, 2009, finding
 "Windy Hill must cease all food service operations until it obtains a Reg.
 61-25 permit from [DHEC], must pay a civil penalty to [DHEC] in the amount of
 [$24,000], and must pay a sanction to the [ALC] in the amount of
 [$12,000]."[2] 
 This appeal followed.
STANDARD OF REVIEW
The ALC presides over all
 hearings of contested DHEC permitting cases and, in such cases, serves as the
 fact-finder and is not restricted by the findings of the administrative
 agency.  Terry v. S.C. Dep't of Health & Envtl. Control, 377 S.C.
 569, 573, 660 S.E.2d 291, 293 (Ct. App. 2008); Marlboro Park Hosp. v. S.C.
 Dep't of Health & Envtl. Control, 358 S.C. 573, 577, 595 S.E.2d 851,
 853 (Ct. App. 2004); see S.C. Code Ann. § 1-23-600(A) (Supp. 2009). 
 This court's scope of review is set forth in section 1-23-610(B) of the South
 Carolina Code (Supp. 2009).  That section provides:

 The
 review of the administrative law judge's order must be confined to the record.
 The court may not substitute its judgment for the judgment of the
 administrative law judge as to the weight of the evidence on questions of fact.
 The court of appeals may affirm the decision or remand the case for further
 proceedings; or it may reverse or modify the decision if the substantive rights
 of the petitioner have been prejudiced because the finding, conclusion, or
 decision is:
 (a) in violation of constitutional or
 statutory provisions;
 (b) in excess of the statutory
 authority of the agency;
 (c) made upon unlawful procedure;
 (d) affected by other error of law;
 (e) clearly erroneous in view of the
 reliable, probative, and substantial evidence on the whole record; or
 (f) arbitrary or capricious or
 characterized by abuse of discretion or clearly unwarranted exercise of
 discretion.

Id.; see S.C. Coastal Conservation League v.
 S.C. Dep't of Health & Envtl. Control, 380 S.C. 349, 360, 669 S.E.2d
 899, 904-05 (Ct. App. 2008) (finding this court's review of an ALC judge's
 order to be governed by S.C. Code Ann. § 1-23-610(C) (Supp. 2007)),rev'd on other grounds, Op. No. 26892 (S.C. Sup. Ct. filed Nov. 15, 2010)
 (Shearouse Adv. Sh. No. 46 at 12); Reliance Ins. Co. v. Smith, 327 S.C.
 528, 535 n.6, 489 S.E.2d 674, 678 n.6 (Ct. App. 1997) (noting the standards of
 review established under S.C. Code Ann. §§ 1-23-380(A)(6) and 1-23-610(D)
 (Supp. 1996) are essentially identical, but declining to decide which section
 would apply to the case due to the similarities between the two sections).[3]
"Under our standard of
 review, we may not substitute our judgment for that of the [ALC] as to the
 weight of the evidence on questions of fact unless the [ALC's] findings are
 clearly erroneous in view of the reliable, probative and substantial evidence
 in the whole record."  Comm'rs of Pub. Works v. S.C. Dep't of Health
 & Envtl. Control, 372 S.C. 351, 358, 641 S.E.2d 763, 766-67 (Ct. App. 2007). 
 Substantial evidence is not a mere scintilla of evidence, but evidence which,
 considering the record as a whole, would allow reasonable minds to reach the
 conclusion the ALC reached.  Leventis v. S.C. Dep't of Health & Envtl.
 Control, 340 S.C. 118, 130, 530 S.E.2d 643, 650 (Ct. App. 2000).  "This
 Court, although not bound by the decision, will ordinarily defer to the opinion
 of a state agency as to the interpretation of a statute it is charged with the
 duty of enforcing."  S.C. Coastal Conservation League, 380 S.C. at
 362, 669 S.E.2d at 906.  "The construction of a statute by the agency
 charged with its administration will be accorded the most respectful
 consideration and will not be overruled absent compelling reasons."  Brown
 v. S.C. Dep't of Health & Envtl. Control, 348 S.C. 507, 515, 560 S.E.2d
 410, 414 (2002) (quoting Dunton v. S.C. Bd. of Exam'rs in Optometry, 291
 S.C. 221, 223, 353 S.E.2d 132, 133 (1987)).
LAW/ANALYSIS
I.  Permanent Food
 Stand Exception
Windy Hill argues the ALC erred in requiring
 Windy Hill to prove it fell within the permanent food stand exception exempting
 it from the requirement of a retail food establishment permit.  We disagree.
Section 44-1-140(2) of the South Carolina Code grants
 DHEC the authority to make, adopt, promulgate, and enforce reasonable rules and
 regulations concerning the sanitation of restaurants, cafes, hot dog and
 hamburger stands, and "all other places or establishments providing eating
 or drinking facilities."  S.C. Code Ann. § 44-1-140(2) (2002).  Pursuant
 to its authority granted by the statute, DHEC adopted Regulation 61-25.  24A
 S.C. Code Ann. Regs. 61-25 (Supp. 2009).  Regulation 61-25 applies to retail
 food establishments and defines a retail food establishment in Chapter I as: 
 "any operation that prepares, packages, serves, processes, or otherwise
 provides food for human consumption, either on or off the premises, regardless
 of whether there is a charge for the food."  24A S.C. Code Ann. Regs.
 61-25(A)(26) (Supp. 2009).  Chapter XIV(A) of Regulation 61-25 provides that
 "[n]o person shall operate a retail food establishment who does not have a
 permit issued by the health authority."  However, Regulation
 61-25(A)(26)(c) lists eighteen establishments that do not qualify as a retail
 food establishment.  Windy Hill claimed it qualified under the "permanent
 food stand exception."  Subsection (c)(12) states permanent food stands
 "serve nonpotentially hazardous food which requires minimal or no
 preparation including pretzels, popcorn, sno-cones, cotton candy, candy apples,
 french fries, soft drinks, draft beer, and similar food."  24A S.C. Code
 Ann. Regs. 61-25(A)(26)(c)(12) (Supp. 2009).         
During the administrative hearing, Judge Kittrell
 stated, "in an enforcement action, the burden is on [DHEC] and they have
 to establish a prima facie case and then the burden can shift over to [Windy
 Hill].  That's the way these matters have been determined and it's been
 outlined by decisional law in this State that way."  Gordon testified the
 burden was on Windy Hill to prove to DHEC that its food qualifies under the exception. 
 Windy Hill correctly asserts that under Administrative Law Court Rule 29(B),
 DHEC bore the burden of proof to establish Windy Hill met the definition of a
 retail food establishment because it sought a civil penalty against Windy
 Hill.  Rule 29(B), SCALC.  However, Windy Hill also asserts DHEC had to prove Windy Hill did not fall within
 the permanent food stand exception, which would exempt it from the requirement
 of a retail food establishment permit.
Windy Hill relies on State v. Solomon, 245 S.C.
 550, 141 S.E.2d 818 (1965), in support of its assertion that the party relying
 on a statute is required to prove the opposing party's conduct does not fall
 within the exception.  In Solomon, the court determined that if the
 exception does not form a part of the description of the offense, then it is a
 defense.  Id. at 564, 141 S.E.2d at 826.  Therefore, the court
 held that after the State had made its prima face case that Solomon had violated
 the statute, the burden of proof shifted to Solomon to prove his work came
 within the exceptions of the statute.  Id. at 575-76, 141 S.E.2d at
 832 (mentioning Charleston Oil Co. v. Poulnot, 143 S.C. 283, 296, 141
 S.E. 454, 458 (1928) (discussing that a seller charged with the violation of
 the statute bears the burden of showing the necessity of selling those articles
 on Sunday)); see also State v. Attardo, 263 S.C. 546, 552, 211
 S.E.2d 868, 871 (1975) ("It is also well established in case law that when
 the State has made out a prima facie case under a statute and the defendant
 claims to fall within an 'exception' or 'proviso' in the statute the burden is
 on the defendant to establish such a defense."); cf. TNS Mills,
 Inc. v. S.C. Dep't of Revenue, 331 S.C. 611, 618, 503 S.E.2d 471, 475
 (1998) ("The burden is on claimants to prove their rights to an exemption
 by bringing themselves clearly within the conditions imposed by the
 statute.").  Although Solomon is a criminal case, we find its
 holding is also applicable in this case to determine the burdens of proof under Regulation 61-25.        
Therefore, DHEC met its burden of proof by
 establishing Windy Hill met the definition of a retail food establishment
 because it prepared, packaged, served, processed, or otherwise provided food
 without a permit.  It was then Windy Hill's burden to rebut DHEC's
 determination that Windy Hill was a retail food establishment by establishing
 it qualifies under the permanent food stand exception.  In response to Windy
 Hill's assertion, DHEC further presented evidence that Windy Hill did not fall
 within the exception because it prepared potentially hazardous food that
 required more than minimal preparation.  Thus, we find the ALC did not err in
 finding the burden was on DHEC to establish a prima facie case, and the burden
 shifted to Windy Hill to prove it
 fell within the permanent food stand exception.  
II. Potentially
 Hazardous Food
Windy Hill argues the ALC
 erred in finding its
 doughnuts constituted a potentially hazardous food thereby excluding Windy Hill
 from the permanent food stand exception. 
 We disagree.
Windy Hill asserts DHEC
 failed to produce any credible evidence that its doughnuts were a potentially
 hazardous food.  Windy Hill also asserts determining doughnuts are a
 potentially hazardous food requires the court to go beyond the plain meaning of
 the regulation, and "[u]nder the 'plain meaning rule,' it is not the
 court's place to change the meaning of a clear and unambiguous statute."  S.C.
 Coastal Conservation League v. S.C. Dep't of Health & Envtl. Control,
 380 S.C. 349, 367, 669 S.E.2d 899, 908 (Ct. App. 2008), rev'd on other
 grounds, Op. No. 26892 (S.C. Sup. Ct. filed Nov. 15, 2010) (Shearouse Adv.
 Sh. No. 46 at 12).
This court will not substitute
 its judgment for that of the ALC as to the weight of the evidence on questions
 of fact unless the ALCs findings are clearly erroneous in view of the
 reliable, probative, and substantial evidence in the record.  Comm'rs of
 Pub. Works v. S.C. Dep't of Health & Envtl. Control, 372 S.C. 351, 358,
 641 S.E.2d 763, 766-67 (Ct. App. 2007).  Further,
 this court accords the most respectful consideration of the construction of a
 statute by the agency charged with its administration and will not overrule it
 absent compelling reasons.  Brown v. S.C. Dep't of Health & Envtl.
 Control, 348 S.C. 507, 515, 560 S.E.2d 410, 414 (2002) (quoting Dunton
 v. S.C. Bd. of Exam'rs in Optometry, 291 S.C. 221, 223, 353 S.E.2d 132, 133
 (1987)).
Gordon, whose job
 involves writing policies and interpreting regulations, and Beaty both
 testified the dry doughnut mix used by Windy Hill contained egg and dairy
 products that would become a potentially hazardous food when rehydrated.  Gordon
 stated DHEC has a policy that dry milk batters are considered a potentially hazardous
 product that has to be temperature controlled.  Therefore, we find the evidence supports the ALC's finding that Windy Hill's doughnuts
 constitute a potentially hazardous food, which excludes Windy Hill from the
 permanent food stand exception.
III. Minimal
 Preparation
Windy Hill argues the ALC erred in finding the production of doughnuts at
 Windy Hill's orchard required more than minimal preparation thereby excluding
 Windy Hill from the permanent food stand exception.  We disagree.
Windy Hill asserts DHEC failed to produce any evidence
 that its doughnuts did not meet the minimal or no preparation requirement of
 the permanent food stand exception.  Windy Hill argues again that determining whether a
 food meets the minimal-preparation prong of the permanent food stand exception
 requires the court to go beyond the plain meaning of the regulation.  It claims
 the plain and obvious interpretation of the regulation is that whatever goes
 into making a pretzel, candy apple, french fries, and the other listed foods,
 constitutes minimal or no preparation, and there is no reason for the court to
 read into the regulation an additional element that only prepackaged frozen
 food fits into the exception for a permanent food stand.   
Again, this court will not substitute our judgment for
 that of the ALC as to the weight of the evidence on questions of fact unless
 the ALCs findings are clearly erroneous in view of the reliable, probative,
 and substantial evidence in the record.  Comm'rs of Pub. Works, 372 S.C.
 at 358, 641 S.E.2d at 766-67.  Also, this
 court accords the most respectful consideration of the construction of a
 statute by the agency charged with its administration and will not overrule it
 absent compelling reasons.  Brown, 348 S.C. at 515, 560 S.E.2d at 414.
Gordon testified
 popcorn, candied apples, french fries, and cotton candy are all minimal
 preparation food items because they do not involve any, or very limited
 preparation.  She stated anything that requires cutting, mixing, or extensive
 equipment would not qualify as a minimal-preparation food.  For example, she
 explained melting chocolate for a mold, and scooping ice cream do not qualify
 as minimal preparation foods and require a permit.  Greulich testified minimal
 preparation uses one bowl and one utensil.  Beaty explained that DHEC permits
 facilities that make pretzels, but it does not regulate facilities that just
 warm the pretzels, like a stand at a ballgame.  Gordon mentioned Krispy Kreme Doughnuts
 has a DHEC permit.
Gusmer testified
 he made the apple cider doughnuts from a dry mix to which he added water and
 apple cider, and mixed the ingredients in a large mixing bowl.  He then poured
 the mixture into a doughnut hopper, which cut the doughnuts into the frying
 oil, and the conveyor dropped the doughnuts onto a carousel to cool after the
 doughnuts were cooked.  Additionally, he dipped half of the doughnuts in
 cinnamon and sugar.  Thus, we find the evidence
 supports the ALC's finding
 the production of doughnuts at Windy Hill's orchard required more than minimal
 preparation, which excluded Windy Hill from the permanent food stand exception.
IV. Retail Food
 Establishment
Windy Hill argues the ALC
 erred in finding the one-time
 service of meatballs at a festival met the definition of a retail food
 establishment and did not fall within the permanent food stand exception.  We disagree.
Windy Hill asserts it only
 served meatballs on one day and that day was prior to DHEC's cease and desist
 order.  Windy Hill essentially argues the meatballs, which are a regulated
 food, are not subject to the regulation because they made them for one day only. 
 It raises this argument for the first time on appeal; therefore, it is not
 preserved for our review.  Brown v. S.C. Dep't of Health & Envtl.
 Control, 348 S.C. 507, 519, 560 S.E.2d 410, 417 (2002) ("Issues not
 raised to and ruled upon by the ALJ are not preserved for appellate
 consideration.").  
Windy Hill also asserts DHEC
 failed to produce any evidence that its meatballs were a potentially hazardous
 food or required more than minimal preparation.  Gordon testified anything that requires mixing or extensive
 equipment would not qualify as a minimal preparation food, and Greulich
 testified that minimal preparation involved one bowl and one utensil.  As a
 result, Windy Hill's meatballs would not qualify as a minimal-preparation food
 because Gusmer testified he purchased pre-made, pre-cooked frozen meatballs,
 which he heated in a steam kettle with apple-butter barbeque sauce, and
 transferred to a crock-pot to keep warm until they were served.  Therefore, we
 find the evidence supports the ALC's finding the production of meatballs at
 Windy Hill's orchard required more than minimal preparation.
V. Forty-Eight Day
 Violation
Windy Hill argues the ALC
 erred in finding Windy Hill
 violated Regulation 61-25 for a period of forty-eight days when there was no
 substantial evidence in the record to support such a finding, and the court
 improperly shifted the burden to Windy Hill to show it did not serve foods that
 allegedly violated the regulation on that number of days.  We disagree.
Windy Hill
 asserts the ALC improperly shifted the burden to Windy Hill to prove the number
 of days it served the foods that violated the regulation by adopting DHEC's
 position that the fines accrued daily without further inspections to verify the
 violation was continuing, unless it notified DHEC it was no longer in
 violation. 
On January 7,
 2008, DHEC determined Windy Hill had been in operation in 2007 for a total of fifty-six
 days, and at a fine of $1,000 per day, DHEC calculated the total penalty was
 $56,000.  Gusmer testified Windy Hill was open in 2007 from August to December,
 Monday through Saturday, with the exception of closing for rain or personal
 business.  He replied in the negative when asked if it was possible for him to
 have been open more than fifty days in 2007.  Gusmer also testified some of the
 days he sold doughnuts that were made off-site, and he estimated he sold the
 pre-made doughnuts for forty-five days. 
Judge Kittrell
 reduced DHEC's civil penalty from $56,000 to $24,000 because Gusmer testified
 Windy Hill was only open six days a week from October 27, 2007 to December 22,
 2007.  Judge Kittrell determined there were fifty-six days between October 27
 to December 22; subtracted the eight Sundays between the dates Windy Hill
 opened and closed; and reduced the per-day penalty amount from $1,000 to $500. 
 Although Judge Kittrell already reduced the penalty by $32,000, Gusmer testified
 he sold pre-made doughnuts for forty-five of the forty-eight days Windy Hill
 was open in 2007.  Thus, the evidence presented is that Windy Hill was only in
 violation of the regulation for three days, which would result in a $1,500 fine. 
 Therefore, we reduce Windy Hill's civil penalty to $1,500.
VI. Fine for Contempt
Windy Hill argues the ALC
 erred in finding Windy Hill
 prepared and sold regulated foods on twenty-four separate days during 2008 and
 basing its fine for contempt on that number of days when there was no
 substantial evidence in the record to support this finding.  We disagree.
Windy Hill asserts there is
 no substantial evidence in the record as to how many days Windy Hill violated
 the August 11, 2008 order that lifted the automatic stay of the DHEC order to
 cease and desist making food without a permit.  Windy Hill maintains only seventeen
 days passed from the date Windy Hill opened, August 23, 2008, and September 8,
 2008, when Windy Hill notified DHEC it had stopped making the doughnuts. 
 Further, Gusmer claims that normally Windy Hill is closed on Sundays.  Windy
 Hill does not dispute it made doughnuts in violation of the order; therefore,
 the ALC did not err in finding Windy Hill in contempt of court.  However, as
 Windy Hill asserts, there were only fourteen days between August 23 and
 September 8 that Windy Hill would have been open for business.  Therefore, we
 find Windy Hill should only be sanctioned for the fourteen days it operated in
 violation of the order.  Judge Kittrell assessed a $500 per-day sanction for twenty-four
 days, for a total of $12,000.  Had Judge Kittrell only sanctioned Windy Hill
 for fourteen days, the total sanction would be $7,000.  Therefore, we reduce Windy Hill's sanction
 to $7,000.
CONCLUSION
Accordingly, we
 affirm the ALC's order with reductions in
 the penalties and sanctions against Windy Hill.
AFFIRMED AS
 MODIFIED.
FEW, C.J.,
 SHORT and WILLIAMS, JJ., concur.

[1]  Gordon testified that in addition to conducting
 audits of the regional inspectors, she also assists the Director of DHEC's
 Division of Food Protection in writing policies and interpreting regulations
 that are implemented statewide. 
[2]  Judge Kittrell reduced DHEC's civil penalty from
 $56,000 to $24,000.
[3] These sections can now be found in S.C. Code Ann. §§
 1-23-380(5) and 1-23-610(B) (Supp. 2009).