0970

KEANE/SHERRATT PARTNERSHIP, by James T. KEANE and Peter E. Sherratt, its Partners, Respondents v. Frank HODGE, Chief of Inspections for the Town of Hilton Head Island; The Board of Adjustment of the Town of Hilton Head Island, its Chairman and Members; and Carey F. Smith, Town Manager, on behalf of the Town of Hilton Head Island, Appellants.

(357 S. E. (2d) 193)

Court of Appeals

*James M. Herring,* of *Herring & Meyer,* Hilton Head Island, *for appellants.*

*Lewis J. Hammet,* of *Bethea, Jordan & Griffin,* Hilton Head Island, *for respondents.*

Heard April 20, 1987.

Decided June 1, 1987.

SANDERS, Chief Judge:

Appellants Frank Hodge, Chief of Inspections for the Town of Hilton Head Island, the Board of Adjustment of the Town of Hilton Head Island and Carey F. Smith, Town Manager, on behalf of the Town of Hilton Head Island appeal from the order of the Circuit Court reversing the denial of a sign permit to respondents Keane/Sherratt Partnership by its partners James T. Keane and Peter E. Sherratt. We affirm.

Messrs. Keane and Sherratt purchased a 1.6 acre tract in what is now the Town of Hilton Head Island. The tract is 300 feet from Pope Avenue, which is the nearest main thoroughfare. As a part of the transaction, Messrs. Keane and Sherratt were conveyed an easement for ingress and egress from Pope Avenue and were granted permission to erect a sign visible from Pope Avenue within this easement. The 1.6 acre tract is depicted on a plat recorded in the Beaufort County Courthouse. The easement for ingress and egress is depicted as a .34 acre tract on the same plat.

Messrs. Keane and Sherratt conveyed the 1.6 acre tract and the easement to Keane/Sherratt Partnership.

The Town thereafter passed an ordinance prohibiting off-premises signs and signs within any street or highway right-of-way. The ordinance contains the following pertinent definitions:

> (30) Off-premise sign: A sign identifying, advertising or directing the public to a business, merchandise, service, institution, residential area, entertainment, or activity which is located, sold, rented, based, produced, manufactured, furnished or taking place at a location other than on the property platted for the business where the sign is located. . . .
>
> (31) On-premise sign: Any sign, the content of which relates to use, occupancy, function, service, or product sold or manufactured on the property platted for the business where the sign is located.
>
> . . .
>
> (38) Premises: The real property (as a unit) which is affected either directly or indirectly by the contents of this article.

. . .

(40) Public right-of-way line: The line where the property meets the public right-of-way at a public street or public waterway, provided that this definition shall not include unimproved alleys, easements, or other similar dedicated uses.

The Partnership applied to the Town for a permit to erect a sign near Pope Avenue within the easement for ingress and egress. The application was accompanied by a letter from its lawyer stating that the Partnership had an easement appurtenant for "ingress and egress as well as signage."[1]

The sign inspector for the Town approved the application. Mr. Hodge, on behalf of the Town, appealed the decision of the sign inspector to the Board asking that the approval be overturned on the ground that the sign was an off-premises sign and thus prohibited by the ordinance.

The Board voted to revoke the permit because in its view an easement appurtenant is not a part of the property which it serves and therefore the sign is an off-premises sign.

The Partnership appealed to the Circuit Court, asserting that its easement constituted part of its property, thereby making the sign an on-premises sign, permissible under the ordinance. The Town maintained in its answer that the sign was an off-premises sign.

At the hearing before the Circuit Court, the Town additionally contended that the sign was prohibited under the part of the ordinance which prohibits signs within any street or highway right-of-way because it was to be erected within the easement for ingress and egress.

The Circuit Court found as a fact that the easement for ingress and egress and the permission to erect a sign within this easement are both easements appurtenant and concluded as a matter of law that easements appurtenant are a part of the property which they serve.

The Circuit Court rejected the contention of the Town that the sign is prohibited because it would be within a

---

[1] We are unable to find any dictionary definition for the word "signage." This is unsurprising. Some words, like some lawsuits, are indigenous only to Hilton Head Island.

street or highway right-of-way, concluding that: (1) the sign was exempted from the prohibition against signs within a street or highway right-of-way because the ordinance exempted easements from the definition of public right-of-way line; and (2) the sign would not be within the right-of-way because the easement for ingress and egress is limited to the part of the .34 acre tract which is paved.

Based on these findings and conclusions, the Circuit Court reversed the decision of the Board. This appeal followed.

The issues presented on appeal are: (1) whether the Circuit Court erred in ruling that the sign was not prohibited by the ordinance because it is not an off-premises sign; and (2) whether the Circuit Court erred in ruling that the sign is not prohibited by the ordinance because it is not within a street or highway right-of-way.

I

The Circuit Court ruled that the easement for ingress and egress and the permission to erect the sign are both easements appurtenant and as such are a part of the property of the Partnership.

> An easement is either "appurtenant" or "in gross". An appendant or appurtenant easement must inhere in the land, concern the premises, have one terminus on the land of the party claiming it, and be essentially necessary to the enjoyment thereof. It attaches to, and passes with, the dominant tenement as an appurtenance thereof. An easement, or right-of-way, in gross is a mere personal privilege to the owner of the land and incapable of transfer by him, and is not, therefore assignable or inheritable.

*Sandy Island Corp. v. Ragsdale*, 246 S. C. 414, 420, 143 S. E. (2d) 803, 806 (1965).[2]

The Town does not argue that an easement appurtenant is not a part of the property which it serves and concedes in its brief that: "In general, we have no quarrel with the Trial

---

[2] The concept of easements appurtenant and dominant estates being considered as one property can be traced to a decision in the first century A.D. by the Roman jurist Celsus. O. Holmes, *The Common Law* 383-84 (1881).

Judge's recitation of authority to the effect that an easement appurtenant is considered to be a part of the dominant estate which the easement serves."

Instead, the Town argues that the permission granted the Partnership to erect the sign is no more than a personal license or easement in gross. We cannot consider this argument. When the case was argued before the Circuit Court, the Town acceded to the position of the Partnership that the permission to erect the sign was an easement appurtenant. Moreover, the Town did not except to the finding of the Circuit Court that the permission to erect the sign was an easement appurtenant. In one of its exceptions, the Town actually referred to the permission to erect the sign as an easement appurtenant. "[W]e are free to reverse only when error is properly preserved in the trial court and properly presented by an exception on appeal." *Bartlett v. Nationwide Mutual Fire Insurance Co.*, 290 S. C. 154, 156-57, 348 S. E. (2d) 530, 531 (Ct. App. 1986).

In any event, the argument of the Town as to the nature of the permission to erect the sign is beside the point. The easement for ingress and egress is clearly an easement appurtenant and thus a part of the property of the Partnership. The sign is to be erected within this easement. Therefore, the sign is not an off-premises sign regardless of whether the permission to erect it is an easement appurtenant or an easement in gross.

The Town also argues that the permission to erect the sign is in conflict with the part of the ordinance which prohibits off-premises signs. We reject this argument for the same reason. Since the sign is not an off-premises sign, the permission to erect the sign does not conflict with the part of the ordinance prohibiting off-premises signs.

II

The Town further argues that the order of the Circuit Court should be reversed because the sign is prohibited by the part of the ordinance which prohibits signs within any street or highway right-of-way. The Circuit Court rejected the same argument based on two conclusions: (1) that the sign was exempted from the prohibition against signs within a street or highway right-of-way because the ordi-

nance exempted easements from the definition of public right-of-way line; and (2) that the sign would not be within the right-of-way because the easement for ingress and egress is limited to the part of the .34 acre tract which is paved. The Town excepted to the second conclusion of the Circuit Court, but not to the first. "An alternative ruling of a lower court that is not excepted to constitutes a basis for affirming the lower court and is not reviewable on appeal." *Folkens v. Hunt*, 290 S. C. 194, 205, 348 S. E. (2d) 839, 846 (Ct. App. 1986).

We also reject this argument on its merits. "[O]rdinances in derogation of natural rights of persons over their property are to be strictly construed as they are in derogation of the common law right to use private property so as to realize its highest utility and should not be impliedly extended to cases not clearly within their scope and purpose." *Purdy v. Moise*, 223 S. C. 298, 302, 75 S. E. (2d) 605, 607 (1953). The ordinance in the instant case defines sixty different terms but does not include definitions of the terms street or highway right-of-way. We construe these terms strictly to mean only public streets and highway rights-of-way and not private easements such as the easement for ingress and egress in the instant case.

Local governments have wide latitude to enact ordinances regulating what people can do with their property, but they must draft their ordinances so that people can have a clear understanding as to what is permitted and what is not. Otherwise, we must construe such ordinances to allow people to use their property so as to realize its highest utility.[3]

For these reasons, the order of the Circuit Court is

---

[3] Property rights have long been regarded as fundamental in Western civilization. G. Dietze, "Magna Carta and Property" 7 (1965) ("The Great Charter was thus in a large measure prompted by the desire to have property rights protected."); J. Figgis, *The Political Aspect of Saint Augustine's 'City of God'* 99 (1921) ("The 'reception', as it is called, of Roman Law in 1495 in Germany may be taken as the date when the Middle Ages came to an end and the Roman ideas of property had conquered the West."); J. Adams, "A Defence of the Constitutions of Government of the United States of America," in 6 *The Works of John Adams* 9 (Charles F. Adams ed. 1851) ("The moment the idea is admitted into society, that property is not as sacred as the laws of God, and that there is not a force of law and public justice to protect it, anarchy and tyranny commence.")

Affirmed.

BELL and GOOLSBY, JJ., concur.