563 S.E.2d 325

**STATE of South Carolina, Respondent,**

v.

**Jeffrey M. THOMPSON, Appellant.**

**No. 25459.**

Supreme Court of South Carolina.

Submitted March 21, 2002.

Decided May 6, 2002.

---

Thomas J. Thompson, of Townsend & Thompson, of Laurens, for appellant.

Chief Counsel Buford S. Mabry, Jr., Deputy Chief Counsel Paul S. League, and Assistant Chief Counsel James A. Quinn, of South Carolina Department of Natural Resources, of Columbia, for respondent.

Justice WALLER.

Appellant Jeffrey M. Thompson was found guilty in magistrate's court of trapping beaver out of season pursuant to S.C.Code Ann. § 50–11–2540 (Supp.2001). The circuit court affirmed, and he appeals. We affirm.

## FACTS

On March 11, 2001, appellant was discovered inspecting beaver traps which he had set on his mother's property. He was charged with trapping out of season. *See* § 50–11–2540. He had been issued a depredation permit pursuant to S.C.Code Ann. § 50–11–2570 (Supp.2001), but the permit expired in January and had not been renewed.[1] Although appellant challenged the statutes' constitutionality, the magistrate found appellant guilty, and the circuit court affirmed.

## ISSUE

Are § 50–11–2540 and § 50–11–2570 unconstitutional?

## DISCUSSION

Appellant argues that sections 50–11–2540 and 50–11–2570 are unconstitutional because they infringe on the fundamental right to defend one's property and they violate the equal

---

1. Apparently, the beavers were causing flooding to his mother's property, essentially converting it to swamp land. The beavers had also damaged timber located on the property.

protection clauses of the United States and South Carolina Constitutions.

Section 50–11–2540 sets a two-month trapping season as follows:

It is lawful to trap furbearing animals for commercial purposes from January first to March first of each year. The trapping season may not exceed sixty days each year under any circumstances. *It is unlawful to trap any other times unless authorized by the department.* It is lawful to take furbearing animals by other lawful means during the general open hunting seasons established therefor.

(Emphasis added). However, when a furbearing animal is causing damage to property, section 50–11–2570 provides the following:

(A) The department may issue *special permits,* at no cost to the applicant, for the taking, capturing, or transportation of a furbearing animal or another game animal which is destroying or damaging private or public property, timber, or growing crops so as to be a nuisance or for scientific or research purposes.

(B) *The permit provided in subsection (A) is not required by the property owner or his designee when capturing furbearing animals or squirrels within one hundred yards of the owner's home when the animal is causing damage to the home or the owner's property.* An animal captured pursuant to this subsection must be destroyed or with a department permit may be relocated.

(Emphasis added).

Thus, trapping out of season is permitted when the animal is causing damage to property. A person is allowed to trap either: (1) with a special depredation permit, or (2) when the animal is causing damage to the home or the owner's property, then the owner or her designee may trap within 100 yards of the owner's home *without* a special permit.

█ Appellant's argument is twofold. First, appellant contends that property owners enjoy a fundamental right to protect their property. Therefore, a property owner may protect her property from an animal causing damage even if the animal is protected by law. Second, appellant maintains that sections 50–11–2540 and 50–11–2570 operate unequally

against different property owners who seek to exercise their fundamental right to protect their property. Consequently, appellant contends that the statutes violate equal protection. While we agree with appellant that property owners have a right to protect their property, we find the statutes are constitutional.[2]

### 1. Right to Protect One's Property

The South Carolina Constitution states: "The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, nor shall any person be deprived of life, liberty, or property without due process of law, nor shall any person be denied the equal protection of the laws." S.C. CONST. art. I, § 3. In other contexts, this Court has noted the "high regard for private property." *Karesh v. City Council of City of Charleston,* 271 S.C. 339, 342, 247 S.E.2d 342, 344 (1978) (discussing eminent domain). Indeed, the Court has stated that "the great and fundamental principle of all constitutional governments . . . secures to every individual the right to acquire, possess, and defend property." *Young v. Wiggins,* 240 S.C. 426, 435, 126 S.E.2d 360, 365 (1962) (internal quotation marks and citation omitted); *see also Keane/Sherratt Partnership v. Hodge,* 292 S.C. 459, 465 n. 3, 357 S.E.2d 193, 196 n. 3 (Ct.App.1987) ("Property rights have long been regarded as fundamental in Western civilization."). These authorities support appellant's argument that the right to protect property is an important and fundamental one.

Moreover, other jurisdictions have found that the right to protect one's property from damage may be sufficient justification for killing wildlife out of season. *See, e.g., Cotton v. State,* 31 Ala.App. 399, 17 So.2d 590 (1944); *State v. Rathbone,* 110 Mont. 225, 100 P.2d 86 (1940); *State v. Burk,* 114 Wash. 370, 195 P. 16 (1921); *Cross v. State,* 370 P.2d 371 (Wyo.1962). As stated in an annotation on this topic:

---

**2.** Initially, we note the State contends appellant has no standing to challenge the statutes because this was his mother's property. However, section 50–11–2570(B) specifically exempts "the property owner or his designee" from the permit requirement. It appears from the facts that appellant was acting on behalf of his mother, the property owner. Therefore, appellant, as his mother's designee, has standing to bring this constitutional challenge.

The rule appears to be well established that the plea of justification is a valid defense to the charge of unlawfully killing a protected wild animal, where it can be shown that killing was reasonably necessary in order to defend property from damage or destruction by the protected animal.

Annotation, *Right to Kill Game in Defense of Person or Property*, 93 A.L.R.2d 1366, 1368 (1964).

While justification may be a defense, the courts have nevertheless noted that the State may infringe on private property rights if done so in a reasonable manner. The Supreme Court of Montana in *Rathbone* stated as follows:

It is conceded that the construction to be given a right guaranteed to the individual by the Constitution must always be a reasonable one. The result of the operation of the police power is necessarily in most instances an infringement of private rights, but in the exercise of such power, property and individual rights may be injured or impaired only to the extent reasonably necessary to preserve the public welfare.

*Rathbone*, 100 P.2d at 92. In *Cotton v. State*, the Alabama Court of Appeals, adopting the *Rathbone* rule, held that: before the defendant can resort to force in protecting his property from wild animals, (1) he must have exhausted all other remedies provided by law; (2) the use of such force must be reasonably necessary and suitable to protect his property; and (3) he must use only such force and means as a reasonably prudent man would use under like circumstances.

*Cotton v. State*, 17 So.2d at 591.

The above-cited authorities specifically dealt with statutes that had a blanket rule against trapping out of season. The courts uniformly found that a defendant may utilize justification, based on the right to protect one's property, as a defense to killing wildlife out of season. In South Carolina, however, the Legislature has implicitly recognized the right to protect one's property from a furbearing animal causing damage. *See* § 50–11–2570. This statute provides a mechanism in the form of a special permit for a property owner to lawfully avoid depredation. § 50–11–2570(A) ("The department may issue special permits, at no cost to the applicant, for the taking,

capturing, or transportation of a furbearing animal or another game animal which is destroying or damaging private or public property, timber, or growing crops so as to be a nuisance . . . ."). Under subsection 50–11–2570(B), a property owner, or her designee, is not required to have a permit if the trapping is done within 100 yards of the owner's home.

While a "landowner has . . . the right to hunt and fish" on her property, this right is "subject to reasonable governmental regulations." *Rice Hope Plantation v. South Carolina Pub. Serv. Auth.*, 216 S.C. 500, 524, 59 S.E.2d 132, 142 (1950), *overruled on other grounds, McCall v. Batson*, 285 S.C. 243, 329 S.E.2d 741 (1985). We find that section 50–11–2570 represents a reasonable limitation on the right to protect one's property. Furthermore, given that "game and fish are really the property of the State, and the preservation thereof is a matter of public interest," *id.*, sections 50–11–2540 and 50–11–2570 do not unreasonably restrict a property owner's right to protect her property. As noted by the State, the Legislature has taken a balanced approach, allowing a property owner to trap without a permit within 100 yards of her home. Moreover, we note there is no fee for a depredation permit, and, according to the State, these permits are issued on the spot by wildlife officers once the damage has been confirmed.[3]

Accordingly, we hold that sections 50–11–2540 and 50–11–2570 do not unconstitutionally infringe on a property owner's right to protect her property.

## 2. Equal Protection

Appellant argues that different property owners are treated unequally under section 50–11–2570, and therefore, the statute does not provide equal protection. Furthermore, appellant contends that because the right to protect property is fundamental, the statute must be reviewed pursuant to a strict scrutiny analysis. We disagree.

---

**3.** Indeed, given that appellant had received a depredation permit, he certainly has no claim that the Department of Natural Resources was not cooperating with him to rid his mother's property of the beaver. Appellant, however, allowed the permit to expire. Furthermore, the officer in the instant case issued him another depredation permit at the same time he issued appellant his ticket for the trapping offense. Thus, based on the facts of this case, it does not appear to be an onerous process to obtain a depredation permit under § 50–11–2570.

■ Initially, we must determine the appropriate standard to review appellant's equal protection argument. If there is no suspect or quasi-suspect class and no fundamental right involved, a statute should be tested under the "rational basis" standard. *Bibco Corp. v. City of Sumter,* 332 S.C. 45, 504 S.E.2d 112 (1998). As discussed above, we agree with appellant that the right to protect one's property is, in certain contexts, a right which is fundamental in nature. In the equal protection context, however, we find it is not a "fundamental right" deserving strict scrutiny.

In *Clajon Production Corp. v. Petera,* 854 F.Supp. 843 (D.Wyo.1994), *aff'd in part, appeal dismissed in part,* 70 F.3d 1566 (10th Cir.1995), the plaintiffs challenged a Wyoming regulation. The regulation provided that certain qualified landowners could apply for up to two additional hunting licenses by virtue of their status as landowners. The plaintiffs alleged the regulation violated the equal protection clause and the takings clause because it restricted landowners to no more than two licenses regardless of the size of their land holdings. The court found no equal protection violation. Significantly, the court found that the plaintiffs' claim was not entitled to strict scrutiny because property rights [4] generally are not recognized as "fundamental" for equal protection purposes. Despite its conclusion, the court stated the following:

> This analysis is not meant to degrade property rights or to say that they are not, in some sense, "fundamental." The point is, however, that property rights are not fundamental rights for purposes of deciding the appropriate level of constitutional scrutiny that must be given to state laws that may affect those rights.

*Id.* at 855 n. 18. Affirming the district court on this issue, the Tenth Circuit stated: "Economic regulations—i.e., those burdening one's property rights—have traditionally been afforded only rational relation scrutiny under the Equal Protection Clause. *See City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985)." *Clajon Production Corp. v. Petera,* 70 F.3d at 1580.

---

**4.** The specific property right asserted in *Clajon* was the right not to have one's property taken without just compensation. 854 F.Supp. at 854.

In *Christy v. Hodel,* 857 F.2d 1324 (9th Cir.1988), *cert. denied sub nom. Christy v. Lujan,* 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1038 (1989), the plaintiff shot a grizzly bear because bears were attacking and killing his grazing sheep. He was subsequently assessed a civil penalty under the Endangered Species Act (ESA). He brought suit challenging the constitutionality of the regulations and arguing that the ESA infringed upon his right to protect his property. The Ninth Circuit recognized that certain state courts had found a state constitutional right to protect property from destruction from wildlife. *Id.* at 1329 (citing *Cross v. State, supra*). The *Christy* court, however, concluded that no such right existed under the federal constitution. In so holding, the court stated:

> We do not minimize the seriousness of the problem faced by livestock owners such as plaintiffs nor do we suggest that defense of property is an unimportant value. We simply hold that the right to kill federally protected wildlife in defense of property is not "implicit in the concept of ordered liberty" nor so "deeply rooted in this Nation's history and tradition" that it can be recognized by us as a fundamental right....

*Id.* at 1330.[5] *But see* Lauri Alsup, Comment, *The Right to Protect Property,* 21 Envtl. L. 209 (1991) (criticizing the *Christy* court's decision); David S. Klain, Casenote, *Does the Endangered Species Act Deprive an Owner of Fundamental Constitutional Rights: Christy v. Hodel,* 12 Geo. Mason U.L.Rev. 421, 430 (1990) (arguing that the United States Supreme Court should acknowledge the existence of a fundamental right to defend one's property under the due process clause).

We are persuaded by these federal authorities that the proper equal protection analysis is not strict scrutiny, but rather rational basis. The fundamental rights which usually are protected by heightened scrutiny are personal rights such as the rights to vote, marry, procreate, etc., and these rights are very different from the right to protect one's property, which essentially is an economic right. *See Clajon Production*

---

5. The *Christy* court found that property rights were not fundamental for purposes of both due process and equal protection. 857 F.2d at 1329–1330, 1332.

*Corp. v. Petera*, 854 F.Supp. at 855. This conclusion "is not meant to degrade property rights or to say that they are not, in some sense, 'fundamental.'" *Id.* at 855 n. 18. As discussed above, there is ample authority stating that property rights are fundamental; however, these statements were never made in the context of an equal protection challenge.[6]

Having determined that rational basis is the appropriate scrutiny, we turn to the merits of appellant's claim. To satisfy equal protection under rational basis review, three requirements must be met: (1) the classification must bear a reasonable relation to the legislative purpose sought to be achieved; (2) members of the class must be treated alike under similar circumstances; and (3) the classification must rest on some rational basis. *E.g., Lee v. South Carolina Dep't of Natural Resources*, 339 S.C. 463, 530 S.E.2d 112 (2000).

We hold that sections 50–11–2540 and 50–11–2570 survive this scrutiny. Clearly, the purpose of these laws is to preserve wildlife[7] and they reasonably relate to that goal. By limiting the trapping season, and placing a slight limitation on a property owner whose property is being damaged (i.e., the special permit requirement), the statutes protect these fur-bearing animals in a reasonable manner, while also balancing a property owner's right to protect property from destruction. Members of the class are treated alike under similar circumstances; that is, all property owners trapping within 100 yards of their residence are treated the same, and all property owners trapping further than 100 yards from their residence are treated the same.[8] Finally, the classification based on the distance from the owner's home is rationally based. As argued by the State, it is rational to allow owners to trap close to their home without a permit; otherwise, the Department of

---

6. Indeed, none of the out-of-state authorities cited by appellant involves a case which holds an equal protection violation in a hunting scenario. These cases simply uphold the general rule that justification based upon the right to protect one's property may be a defense to a hunting violation.

7. *See Rice Hope Plantation v. South Carolina Pub. Serv. Auth.*, 216 S.C. at 524, 59 S.E.2d at 142 (the preservation of game and fish is a matter of public interest).

8. Appellant presents a hypothetical in his brief that establishes 4 different classes of owners: (1) an owner who traps within 100 yards of the

Natural Resources "would be swamped with permit requests." More importantly, it clearly is reasonable to allow a property owner to capture a damage-causing animal when it is that close to the residence without first requiring the owner to secure a permit. Accordingly, these statutes withstand rational basis review and do not violate equal protection.

## CONCLUSION

We hold that sections 50–11–2540 and 50–11–2570 are constitutional.

**AFFIRMED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.

</div>

---

home (no permit required); (2) an owner who traps further than 100 yards of the home (permit required); (3) an owner who has a building on the property, but not a home (permit required); and (4) an owner who has no buildings on the property (permit required). Although this is an interesting hypothetical, appellant unfortunately defeats his own argument. These classes of owners are not similarly situated, and therefore not deserving of equal protection. *Cf. State v. Thompson,* 136 Idaho 322, 33 P.3d 213 (2001) (where the court held that a gardener convicted of killing a deer out of season was not similarly situated to a rancher who is permitted to kill a predator without a permit if it is to protect his livestock; therefore, the court found no equal protection violation); *see also TNS Mills, Inc. v. South Carolina Dep't of Revenue,* 331 S.C. 611, 626, 503 S.E.2d 471, 479 (1998) ("In order to establish an equal protection violation, a party must show that **similarly situated** persons received disparate treatment.") (emphasis added).