679 S.E.2d 182

**David SOJOURNER, Appellant,**

v.

**TOWN OF ST. GEORGE and the County of Dorchester, Respondents.**

**No. 26680.**

Supreme Court of South Carolina.

Submitted June 24, 2009.

Decided June 29, 2009.

Frances I. Cantwell, of Charleston, for Appellant.

John G. Frampton, of Summerville; Margaret C. Pope, Gary T. Pope, and Belton T. Zeigler, all of Pope Zeigler, LLC, of Columbia; and Trudy H. Robertson, of Moore & Van Allen, PLLC, of Charleston, for Respondents.

Chief Justice TOAL:

In this case, Appellant David Sojourner (Sojourner) filed suit against Respondents Town of St. George ("Town") and County of Dorchester ("County") after the Town adopted an ordinance ("Ordinance") which authorized the sale of its sewer system to the County. Sojourner filed suit against Respondents[1] alleging that pursuant to statute, the Town was required to hold an election approving the sale. The Master–In–Equity ruled that the statute requiring an election approving the sale was unconstitutional and that pursuant to provisions of the Home Rule Act, the Town was authorized to sell the sewer system pursuant to the Ordinance. Sojourner appealed the Master's decision. We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

For many years, the Town has owned and operated a water system and sewer system within its corporate boundaries in compliance with applicable regulations. Likewise, the County

---

1. The Town and County are hereinafter referred to together as "Respondents".

has owned and operated a sewer collection and wastewater treatment system throughout the County, but outside the corporate limits of the Town. While the Town has been operating its water system and sewer system in full compliance with the applicable regulations, the Town will have to make substantial investments in the sewer system in the near future in order to meet increasing regulatory standards and maintenance needs. For this reason, on August 18, 2008, the Town council adopted the Ordinance approving an agreement[2] for the conveyance and transfer of assets comprising the sewer system currently owned and operated by the Town to the County.

Sojourner resides and owns real property in the Town. He is also an elector and a taxpayer of the Town and County, as well as a customer of the water system and sewer system of the Town. On August 26, 2008, Sojourner filed an action contesting the validity of the Ordinance, contending it conflicted with State law, and seeking an injunction against its enforcement. In particular, Sojourner alleged that S.C.Code Ann. § 5–31–620 (2004) (the "Election Provision") requires that an election be held prior to acquiring or disposing of a public utility and that S.C.Code Ann. § 5–31–640 (2004) (the "Freeholder Provision") requires that twenty-five percent of the resident freeholders of the municipality petition the municipality before an election may be held. Sojourner argued that Respondents' agreement to sell was in violation of the law because there was no written petition from any residents, qualified registered electors, or freeholders within the Town submitted to the Town Council or to any other public authority in the Town or County requesting an election on this matter.

Respondents countered that the Freeholder Provision is unconstitutional because it restricts the voting rights of the Town's electors and their elected representatives in violation of the Equal Protection Clauses of the United States Constitu-

2. The agreement provides that the County will pay the Town $1.9 million for the assets comprising the Town's sewer system and will obtain a non-exclusive franchise to provide sewer service within the Town. The Town will retain ownership and operation of its water system and the legal right to extend sewer service to customers in its boundaries, if circumstances warrant it doing so in the future.

tion and the South Carolina Constitution. Respondents further argued that the Freeholder Provision is inextricably intertwined with the Election Provision, and that both sections are therefore unconstitutional and unenforceable.

On January 14, 2009, the Master–In–Equity issued an order in favor of Respondents. The Master declared The Freeholder Provision unconstitutional as violative of the Equal Protection Clause, declared the Election Provision unconstitutional because it was inextricably intertwined with the unlawful Freeholder Provision, and held that Respondents' agreement was valid pursuant to authority granted to local governments by the Home Rule Act of 1975.

Sojourner appealed the Master's decision and presents the following questions for this Court's review:

I. Did the Master err in declaring the Freeholder Provision unconstitutional on the grounds that it is an unlawful restriction on voting rights in violation of the Equal Protection Clause?

II. Did the Master err in declaring the Election Provision unconstitutional on the grounds that it is inextricably intertwined with the unconstitutional Freeholder Provision?

III. Did the Master err in holding that, in the absence of the Freeholder and Election Provisions, the Home Rule Act authorizes local governments to sell municipal utilities?

## STANDARD OF REVIEW

A "legislative act will not be declared unconstitutional unless its repugnance to the constitution is clear and beyond a reasonable doubt." *Joytime Distribs. & Amusement Co., Inc. v. State*, 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999). Every presumption is made in favor of a statute's constitutionality. *Gold v. South Carolina Bd. of Chiropractic Exam'rs*, 271 S.C. 74, 78, 245 S.E.2d 117, 119 (1978). The scope of review should be limited in cases involving a constitutional challenge to a statute because all statutes are presumed constitutional and, if possible, will be construed to render them valid. *Hendrix v. Taylor*, 353 S.C. 542, 550, 579 S.E.2d 320, 324 (2003).

LAW/ANALYSIS

## I. Constitutionality of the Freeholder Provision

Sojourner argues that a compelling state interest justifies conditioning the sale of a municipally-owned sewer and water system on an election triggered by a freeholder-initiated petition and the Freeholder Provision is therefore constitutional. We disagree.

█ The right to vote is a fundamental right protected by heightened scrutiny under the Equal Protection Clause. *State v. Thompson*, 349 S.C. 346, 354, 563 S.E.2d 325, 329–30 (2002). Restrictions on the right to vote on grounds other than residence, age, and citizenship generally violate the Equal Protection Clause and cannot stand unless such restrictions promote a compelling state interest. *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 627, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969).

The Freeholder Provision provides:

Before any election shall be held under the provisions of this article at least twenty-five per cent of the resident freeholders of the city or town, as shown by its tax books, shall petition the city or town council that such election be ordered.

Section 5–31–640.

Sojourner argues the Freeholder Provision is justified by the compelling state interest in protecting the property rights of freeholders. In particular, Sojourner argues that maintenance and operation of sewer systems have an effect on property owners that is different from and greater than that on the general public.

█ We find that there is no compelling interest to support the Freeholder Provision. Municipal utilities, as with other matters that affect public health and safety of the entire community, have long been considered to be of general interest to the community. *Hill v. Stone*, 421 U.S. 289, 299, 95 S.Ct. 1637, 44 L.Ed.2d 172 (1975) (holding that "even under a system in which [payment] falls directly on property taxpayers, all members of the community share in the cost in various ways"). Indeed, the legislative intent of the Municipal Utility

Act, of which the Freeholder and Election Provisions are a part, is expressly dedicated for the benefit of all those who own, use, or occupy dwellings or commercial buildings and exercised in accordance with the police powers necessary to regulate the maintenance and preservation of the health of the inhabitants of the State. *See* S.C.Code Ann. § 5–31–2010 (2004). Moreover, in the Equal Protection context, the right to protect one's property is not a fundamental right. *Thompson*, 349 at 353, 563 S.E.2d at 329. In our view, Sojourner's argument that property owners are so much more affected by sewer system operations than other voters so as to create a compelling state interest in special statutory protection has no foundation in fact or in law and is therefore without merit. Accordingly, we hold that the Freeholder Provision is not supported by a compelling state interest and is therefore unconstitutional.

## II. Severability of the Freeholder Provision from the Election Provision

Sojourner argues that even if the Court finds that the Freeholder Provision is unconstitutional, it may be severed because it is not so intertwined with the Election Provision that the Election Provision may not be enforced. We disagree.

The test for severability is whether the constitutional portion of the statute remains complete in itself, wholly independent of that which is rejected, and is of such a character that it may fairly be presumed that the legislature would have passed it independent of that which conflicts with the constitution. *Joytime Distribs. & Amusement Co., Inc.*, 338 S.C. at 648, 528 S.E.2d at 654.

The Election Provision provides:

Before such construction, purchase, sale, conveyance or disposal of any [municipal utility] ... the city or town council of the municipality shall submit the question of such construction, purchase, sale, conveyance or disposal of the qualified registered electors of the city or town at an election to be ordered for that purpose by the city or town

council and to be conducted in accordance with the laws governing municipal elections.

Section 5–31–620.

■ We agree with the Master that the Election Provision and the Freeholder Provision are mutually dependent and cannot be severed. The Freeholder Provision conditions an election authorizing the sale of a sewer system upon freeholders petitioning the city or town council for such election. Moreover, the Freeholder Provision and the Election Provision were initially part of one section when enacted, and thus, we find that the original legislative intent was for both provisions to operate as a cohesive procedure. In other words, we do not believe it may fairly be presumed that the Legislature would have passed the Election Provision independent of the unconstitutional Freeholder Provision. *See Fairway Ford, Inc. v. Timmons,* 281 S.C. 57, 60, 314 S.E.2d 322, 324 (1984) (refusing to sever where "[t]he obvious intent of the Legislature to require approval of freeholders is so dominant that it cannot be said that the statute, without the portion declared unconstitutional, would have been enacted without the freeholder approval requirement.").

Accordingly, we hold that because the Election Provision is inextricably intertwined with the Freeholder Provision, the Election Provision may not be severed and it is therefore not enforceable.

### III. Home Rule Act

Lastly, Sojourner argues that S.C.Code Ann. § 5–7–40 (2004), enacted as part of the Home Rule Act, does not properly authorize the sale of a municipal utility independent of the Freeholder and Election Provisions. We disagree.

Section 5–7–40 provides:

All municipalities of this State may own and possess property within and without their corporate limits, real, personal or mixed, without limitation, and may, by resolution of the council adopted at a public meeting and upon such terms and conditions as such council may deem advisable, sell, alien, convey, lease or otherwise dispose of personal property and in the case of a sale, alienation, conveyance, lease or

other disposition of real or mixed property, such council action must be effected by ordinance.

The Legislature did not intend, by granting particular powers to a municipality, to thereby limit the general powers of the municipality. *See* S.C.Code Ann. § 5–7–10 (2004).

■■ For the reasons stated above, § 5–31–640 and § 5–31–620 cannot be applied to require the Town to hold a referendum prior to the sale of its sewer system. Therefore, we look to the Home Rule Act for guidance regarding the procedures the Town must follow to effectuate the sale. Pursuant to the authority granted in § 5–7–40 in conjunction with the expressed legislative intent in § 5–7–10, the Town is fully authorized to sell its sewer system pursuant to the Ordinance. In our view, to hold otherwise would completely ignore the applicable statutory framework that the Legislature has provided for municipal matters and would simultaneously subvert Legislative intent. Accordingly, we hold that the Home Rule Act authorizes the sale of the Town's sewer system pursuant to the Ordinance.

### CONCLUSION

For the foregoing reasons, we hold that the Freeholder Provision is unconstitutional, the Election Provision is unenforceable, and § 5–7–40 authorizes the Town to enter into an agreement for the sale of the sewer system pursuant to the Ordinance.

**AFFIRMED**

WALLER, BEATTY and KITTREDGE, JJ., concur.
PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES, dissenting:

I respectfully dissent. Assuming that S.C.Code § 5–31–640 fails to meet constitutional muster and must be struck down in its entirety,[3] I would uphold § 5–31–620 and its election

---

**3.** *Compare Millsap v. Quinn,* 785 S.W.2d 82 (Mo.1990)(term freeholder struck from state constitutional provision leaving the rest intact); *State v. Liggett & Myers Tobacco Co.,* 171 S.C. 511, 172 S.E. 857 (1933)(court will strike words and even add others or change ordinary meanings in order to uphold statute against constitutional challenge).

requirement. This election provision not only requires an election before a municipality may sell, convey, or dispose of a sewer system but also before such a system can be constructed or purchased. As such, it effectuates the requirement found in S.C. Const. art. VIII, § 16, titled "Acquisition and operation of public utility systems," of a majority vote of the electors in a political subdivision before a municipality may acquire or operate a utility, including sewer systems. In my view, the legislature would not have intended to deny municipalities and their electors the ability to exercise their constitutional right to "acquire [a utility] by initial construction or purchase," a right they can exercise only through an election held pursuant to § 5-31-620. I would therefore hold that § 5-31-620, the Election Provision, survives the striking of § 5-31-640, the Freeholder Provision.