# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Alan Wilson, Attorney General, ex rel. State of South Carolina, Petitioner,

v.

City of Columbia, Respondent.

Appellate Case No. 2021-000889

---

## ORIGINAL JURISDICTION

---

Opinion No. 28056
Heard August 31, 2021 – Filed September 2, 2021

---

## JUDGMENT DECLARED

---

Attorney General Alan Wilson, Solicitor General Robert D. Cook, and Deputy Solicitor General J. Emory Smith Jr., all of Columbia, for Petitioner.

Teresa A. Knox and Patrick L. Wright, Richard A. Harpootlian, Christopher Phillip Kenney all of Columbia, for Respondent.

W. Allen Nickles III, of Nickles Law Firm, LLC, of Columbia, for Amicus Curiae South Carolina Education Association.

B. Eric Shytle, of the Municipal Association of South Carolina, and James H. Goldin, of Jamey Goldin, Esq., both of Columbia, for Amicus Curiae Municipal Association of South Carolina.

Wilbur E. Johnson and Julia P. Copeland, of Charleston, and Kathleen F. Monoc, of Monoc Law, LLC, of Charleston, all for Amicus Curiae City of Charleston.

Elizabeth A. McLean, of Columbia, and Danny C. Crowe, of Crowe LaFave, LLC, of Columbia, both for Amicus Curiae Richland County.

———————

**JUSTICE KITTREDGE:**  South Carolina Attorney General Alan Wilson brings this declaratory judgment action in our original jurisdiction.  This is the second case involving legislation passed by our General Assembly concerning the use of facemasks in the public schools of South Carolina during the coronavirus pandemic.  Recently, we construed Proviso 117.190 of the 2021-2022 Appropriations Act,[1] which related to public institutions of higher learning, and determined from the language in that proviso that the University of South Carolina was not precluded from issuing a universal mask mandate that applied equally to vaccinated and unvaccinated students and faculty alike.  *Creswick v. Univ. of S.C.*, Op. No. 28053 (S.C. Sup. Ct. filed Aug. 17, 2021) (per curiam).

Just as *Creswick* was easily resolved purely as a function of statutory interpretation, so too is this case.  This case involves a different proviso from the 2021-2022 Appropriations Act, Proviso 1.108, relating to public schools serving students grades kindergarten through 12 (K-12).  Unlike the proviso in *Creswick*, Proviso 1.108 manifestly sets forth the intent of the legislature to prohibit mask mandates funded by the 2021-2022 Appropriations Act in K-12 public schools.  The Attorney General contends the City of Columbia passed ordinances—in direct opposition to Proviso 1.108—mandating masks in all K-12 public schools in the City of Columbia.  We appreciate that the South Carolina legislature and the City of Columbia have differing views on whether parents of school children should decide whether their children must wear masks at school or whether the government should mandate that decision.  Each legislative body has clearly expressed its respective position through legislative enactments, and both legislative bodies have acted in good faith.  While allowing school districts flexibility to encourage one policy or the other, the state legislature has elected to

———————

[1] H. 4100, 124th Leg., 1st Reg. Sess. (S.C. 2021), *available at* https://www. scstatehouse.gov/sess124_2021-2022/appropriations2021/tap1b.htm#s117.

leave the ultimate decision to parents. Conversely, the City of Columbia has attempted to mandate masks for all school children by following guidance from the Centers for Disease Control, which has the effect of disallowing parents a say in the matter.[2] For the reasons set forth below, we uphold Proviso 1.108 and declare void the challenged ordinances of the City of Columbia insofar as they purport to impose a mask mandate in K-12 public schools.[3]

## I.

By prior order of this Court, we accepted this case in our original jurisdiction, for it involves a justiciable matter of significant public interest. Rule 245(a), SCACR.

## II.

Proviso 1.108—enacted into law on June 22, 2021, and directed to the South Carolina Department of Education for South Carolina's K-12 public schools—provides with unmistakable clarity:

> (SDE: Mask Mandate Prohibition) No school district, or any of its schools, may use any funds appropriated or authorized pursuant to this act to require that its students and/or employees wear a facemask at any of its education facilities. This prohibition extends to the announcement or enforcement of any such policy.

The City of Columbia (the City) later enacted ordinances mandating masks in all K-12 public schools within the City, specifically Ordinances 2021-068[4] and 2021-

---

[2] Justice Hearn characterizes the role of parental choice in the legislative policy debate as "political gloss." This characterization is completely and utterly incorrect. The role of parental choice in that debate is a fact. As noted above, we find the state legislature and the City of Columbia have demonstrated good faith. We even go further and recognize, as explained below, the possibility that a local government could impose a mask mandate without contravening Proviso 1.108. That potential result would, of course, hold true regardless of the presence or absence of parental involvement in the masking decision.

[3] No other issue concerning the ordinances is before the Court, and we offer no opinion on the validity of the balance of the ordinances.

[4] https://www.columbiasc.net/uploads/headlines/08-04-2021/emergency-meeting-ordinance/Ordinance_2021_068_Emergency_Order_Declaring_State_of_Emergen

069.[5]  One ordinance is an "Emergency Order by the Mayor Declaring a State of Emergency," and the second ordinance ratifies and mirrors the Mayor's declaration of an emergency.  Based on the City's policy judgment on how best to deal with the coronavirus, the ordinances mandate facemasks for "all faculty, staff, children over the age of two (2), and visitors, in all buildings at public and private schools or daycares."

By letter dated August 11, 2021, Attorney General Wilson notified the City of the conflict between Proviso 1.108 and the City's ordinances:

> It is the opinion of my office that these ordinances are in conflict with state law and should either be rescinded or amended.  Otherwise, the city will be subject to appropriate legal actions to enjoin their enforcement.  Encouragement of facemask wearing by city officials and even requirements for facemasks in city buildings and other facilities would not be in violation of the proviso.  Also, parents, students, and school employees may choose to wear facemasks anywhere at any time.
>
> My office has previously opined that budget provisos have the full force and effect of state law throughout the fiscal year for which a budget is adopted. . . .
>
> . . . .
>
> . . . While we appreciate the efforts of city leaders around the state to protect their populace from the spread of the COVID-19 virus and variants of it, these efforts must conform to state law.

On the same day, the City responded to the Attorney General:

> In the matter at hand, the issue is whether a Proviso that acts as a "Mask Mandate Prohibition" for schools and school districts[] is germane to fiscal issues, raising and spending taxes, which is the sole purpose of the appropriations act[.]  The clear answer, using the sound

cy_Facial_Coverings.pdf.

[5] https://www.columbiasc.net/uploads/headlines/08-05-2021/citycouncil-ratifies-state-of-emergency-ordinance/Ordinance_2021_069_Ratifying_Ordinance_2021_068_Declaring_State_of_Emergency_Facial_Coverings.pdf.

logic of our Supreme Court[,] is that it is not.  A mask mandate prohibition is clearly not a matter that is germane to fiscal issues[,] which is the only issue allowed to be taken up in the general appropriations act[,] and therefore it is unconstitutional and unenforceable.

As we will explain, the City's legal opinion is incorrect.  Moreover, the City claims that it has the legal authority to impose and enforce the mask mandate ordinances, for there is allegedly no conflict with state law.

### III.

We first address what is perhaps the most important underlying issue in the case: the Court's authority to decide the better policy decision between competing determinations made by the South Carolina General Assembly and a local government.  We, of course, have no such authority to countermand a constitutional policy judgment of our state legislature, just as we have no power to impose our own policy judgment on the state legislature or local legislative bodies.

In *Creswick*, we noted that we were "simply construing [Proviso 117.190] as it [was] written," and that our holding was "not an approval or disapproval of a [mask] mandate, nor [was] it an approval or disapproval of an attempt by the General Assembly to prohibit a [mask] mandate."  The same holds true today, as we emphatically remind the parties and the public that the wisdom or efficacy of mandating school children to wear facemasks to combat the coronavirus is not before us.  As noted above, the South Carolina General Assembly and the City have expressed their respective positions through legislative enactments.  The state legislature has elected to leave the decision to parents; the City believes it should make the decision without parental involvement.

We fully recognize that strong and passionate opinions exist on both sides of this debate.  Yet, we must remind ourselves, the parties, and the public that, as part of the judicial branch of government, we are not permitted to weigh in on the merits of the facemask debate.  Rather, we are a court that is constitutionally bound by the rule of law—specifically, separation of powers—to interpret and apply existing laws; we do not, and cannot, set public policy ourselves.  Instead, the people of South Carolina, through their elected state representatives, set the state's policy.

Where, as here, the General Assembly establishes policy via legislation, it is our solemn duty to uphold that law absent a clear constitutional infirmity.  More to the point, the policy of the state legislature to leave to parents the masking decision is

most assuredly well within the broad parameters of the legislature's constitutional boundaries. *See Elliott v. Sligh*, 233 S.C. 161, 165, 103 S.E.2d 923, 925 (1958) ("All considerations involving the wisdom, policy, or expediency of an act are addressed exclusively to the General Assembly. We are only concerned with the power of that body to enact a law.").[6]

## IV.

## A.

We next address the City's constitutional challenge to Proviso 1.108, namely, that the proviso violates the one-subject rule. Given the deferential standard of review, we respectfully disagree. *See, e.g.*, *Doe v. State*, 421 S.C. 490, 501, 808 S.E.2d 807, 813 (2017) (describing the "limited" standard of review).

"All statutes are presumed constitutional and will, if possible, be construed so as to render them valid." *Joytime Distribs. & Amusement Co. v. State*, 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999); *see also Sojourner v. Town of St. George*, 383 S.C. 171, 175, 679 S.E.2d 182, 185 (2009) ("Every presumption [must be] made in favor of a statute's constitutionality."). "A legislative act will not be declared unconstitutional unless its repugnance to the constitution is clear and beyond a reasonable doubt." *Joytime Distribs.*, 383 S.C. at 640, 528 S.E.2d at 650.

The one-subject rule of the South Carolina Constitution provides: "Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." S.C. Const. art. III, § 17. Thus, an act must relate to only one subject, "with topics in the body of the act being kindred in nature and having a legitimate and natural association with the subject of the title," and the title of the act must "convey reasonable notice of the subject matter to the legislature and the public." *Westvaco Corp. v. S.C. Dep't of Revenue*, 321 S.C. 59, 64, 467 S.E.2d

---

[6] We emphasize the Court's limited role in this case because the City's Answer and Counterclaim appears to invite this Court into making a legislative and policy decision based on our own individual views of facemask mandates for school children. For example, the City of Columbia asserts, "Transmission rates of the SARS-CoV-2 virus, including the highly contagious delta variant, are rising in Columbia and surrounding communities." Even giving credence to that statement, we find, as we must, that the wisdom of the state legislature to allow parents to decide whether their children wear masks—instead of mandating masks for all school children—is for others to debate, not for this Court to decide.

739, 741 (1995).  A provision in a general appropriations act does not violate the one-subject rule if it "reasonably and inherently relates to the raising *and spending* of tax monies."  *Town of Hilton Head Island v. Morris*, 324 S.C. 30, 35, 484 S.E.2d 104, 107 (1997) (emphasis added).

Proviso 1.108 is reasonably and inherently related to the spending of tax money.  It was included as part of the Department of Education's budget and prohibits funds appropriated by the act from being spent on mask mandates in K-12 public schools.  The title of the 2021-2022 Appropriations Act is:

> AN ACT TO MAKE APPROPRIATIONS AND TO PROVIDE REVENUES TO MEET THE ORDINARY EXPENSES OF STATE GOVERNMENT FOR THE FISCAL YEAR BEGINNING JULY 1, 2021, *TO REGULATE THE EXPENDITURE OF SUCH FUNDS*, AND TO FURTHER PROVIDE FOR THE OPERATION OF STATE GOVERNMENT DURING THIS FISCAL YEAR AND FOR OTHER PURPOSES.

(Emphasis added.)  This title "convey[s] reasonable notice of the subject matter to the legislature and the public."  *Westvaco Corp.*, 321 S.C. at 64, 467 S.E.2d at 741.  Likewise, Proviso 1.108 has a legitimate and natural association with the title of the Appropriations Act, as it regulates the expenditure of appropriated funds by K-12 public schools.  Proviso 1.108 therefore does not violate the one-subject rule.[7]

## B.

The City next suggests its ordinances do not conflict with state law because the City will itself fund and enforce the mandate in the City's public schools, rather than using any state-appropriated funds to do so.  We find this second argument similarly without merit.  The notion that City employees would infiltrate the schools and, without any assistance from school personnel and without a penny of state funds, would be able to mandate masks and impose civil penalties for

---

[7] We note that numerous amici briefs have been filed which seek to raise additional issues, including constitutional challenges wholly distinct from that asserted by the City (i.e., the one-subject rule).  The parties, through their pleadings, determine the issues before the Court.  The issues before the Court may not be expanded through amici briefs, and we therefore decline to address the merits of any additional constitutional challenges.

violations strains credulity and, in fact, is demonstrably false, as proven by the terms of the ordinances themselves.

Expressly contrary to Proviso 1.108, the ordinances require school personnel to enforce the City's mask mandate or face monetary and other legal sanctions.  The City ordinances would impose a $100 fine for each "civil infraction."  In addition to the fine, "repeated violations of this Ordinance by a person who owns, manages, operates or otherwise controls a school" are subject to a host of legal sanctions.  The ordinance then defines a "person" as "any individual associated with the school . . . who has control and authority . . .  such as a principal, vice principal, administrator, staff, owner, manager or supervisor."  The ordinance further expands the definition of a "person" in breathtaking fashion to "also include an employee or other designee that is present at the business but does not have the title of principal, administrator, manager or supervisor, etc., but has the authority and ability to ensure that the requirements of this Ordinance are met while the school or business is open."  By making "etc." responsible for enforcing the mask mandate, the City has made clear that every school employee is in the crosshairs.  Simply put, whether intentionally or inadvertently, the City threatens all school personnel with far-reaching and unknown legal liability unless all school personnel ensure obedience to the ordinances.  Thus, the ordinances force school personnel— all of whom have an obvious connection to state-appropriated funds—to choose between violating state law (Proviso 1.108) or city law (the ordinances).  We therefore reject the City's argument that the ordinances can be harmonized with state law.

We do not outright reject the possibility that a local government could impose a mask mandate without contravening Proviso 1.108.  Here, however, the enforcement provisions of the City's ordinances make clear that school personnel—paid at least in part with "funds appropriated or authorized pursuant to [the 2021-2022 Appropriations Act]"—are responsible for enforcing the City's mask mandate.  That is in direct conflict with Proviso 1.108.

## C.

This brings us to the real point of contention—may the City enact ordinances in direct conflict with state law?  The answer is unsurprisingly and unequivocally "no."  *See McAbee v. S. Ry. Co.*, 166 S.C. 166, 168, 164 S.E. 444, 444 (1932) ("The government of a municipality is created by the laws of the State of South Carolina, and the creature cannot be greater than its creator, and the laws of a municipality to be good must not be inconsistent with the laws of the State.").

"It is well settled that where there is a conflict between a State statute and a city ordinance, as where an ordinance permits that which a statute prohibits, the ordinance is void." *State v. Solomon*, 245 S.C. 550, 575, 141 S.E.2d 818, 831 (1965). This Court has never wavered in its adherence to this bedrock principle. *See, e.g., id.* at 574–75, 141 S.E.2d at 831 ("The trial judge held that the City [of Charleston's] ordinance was in direct conflict with the prior State statute and void for that reason. The effect of his ruling was that the City ordinance could not make legal that which the State statute declared unlawful. We think that the trial judge ruled correctly."). As we explained in *City of North Charleston v. Harper*,

> Local governments derive their police powers from the state. The state has granted local governments broad powers to enact ordinances respecting any subject as shall appear to them necessary and proper for the security, general welfare and convenience of such municipalities. This is in recognition that more stringent regulation often is needed in cities than in the state as a whole. *However, the grant of power is given to local governments with the proviso that the local law not conflict with state law.*

306 S.C. 153, 156, 410 S.E.2d 569, 571 (1991) (emphasis added) (internal citations omitted) (internal quotation marks omitted).

The City premises its authority to enact the ordinances under the Home Rule Act, S.C. Code Ann. §§ 5-7-10 to -310 (2004), merely upon its unilateral declaration of a state of emergency and an alleged need to preserve the "health, peace, order and good government of its citizens." We find such an argument specious and wholly unsupported by law. The Home Rule doctrine in no manner serves as a license for local governments to countermand a legislative enactment by the General Assembly, nor has this Court ever construed it in that manner. *See, e.g., City of N. Charleston*, 306 S.C. at 156, 410 S.E.2d at 571 (noting a grant of police power to local governments is given with the caveat that the locality may not enact ordinances that conflict with state law); *see also Williams v. Town of Hilton Head Island*, 311 S.C. 417, 422, 429 S.E.2d 802, 805 (1993) (explaining Home Rule "bestow[s] upon municipalities the authority to enact regulations . . . so long as such regulations are not inconsistent with the Constitution and general law of the state"). A declaration of an emergency does not alter this settled principle, for otherwise local governments could arbitrarily and unilaterally ignore—effectively overrule—legislative enactments by the General Assembly. *Cf. Moye v. Caughman*, 265 S.C. 140, 143, 217 S.E.2d 36, 37 (1975) (finding, in the context of public education, that Home Rule does not apply to local governments "because public education is not the duty of [local governments], but of the General

Assembly," and the "General Assembly has not been mandated by any constitutional amendment to enact legislation to confer upon [local governments] the power to control the public school system").

The City's ordinances are in conflict with state law. Resolving a conflict between state law and a city (or county) ordinance invokes the principle of preemption.

> Conflict preemption occurs when the ordinance hinders the accomplishment of the statute's purpose or when the ordinance conflicts with the statute such that compliance with both is impossible. *See Peoples Program for Endangered Species v. Sexton*, 323 S.C. 526, 530, 476 S.E.2d 477, 480 (1996) ("To determine whether the ordinance has been preempted by Federal or State law, we must determine whether there is a conflict between the ordinance and the statutes and whether the ordinance creates any obstacle to the fulfillment of Federal or State objectives."); . . . 56 Am. Jur. 2d *Municipal Corporations* [§] 392 [(2000)] ("[Implied] conflict preemption occurs when an ordinance prohibits an act permitted by a statute, or permits an act prohibited by a statute[.]") . . . .

*S.C. State Ports Auth. v. Jasper Cnty.*, 368 S.C. 388, 400–01, 629 S.E.2d 624, 630 (2006).

The conflict here is express, and, thus, Proviso 1.108 preempts the ordinances because "compliance with both is impossible." *Id.* at 400, 629 S.E.2d at 630. Moreover, even in the absence of an express conflict, the ordinances cannot stand, for the ordinances frustrate the purpose of the proviso and are therefore preempted. 5 McQuillin *Municipal Corporations* § 15:19 (3d ed. Aug. 2020 Update) ("[E]ven when a local ordinance does not expressly conflict with a State statute, it will be preempted when it frustrates the statute's purpose.").

## V.

In sum, the City's challenged ordinances cannot stand. We reiterate that we address and decide only the legal question before the Court. The supreme legislative power in this state is vested in the South Carolina General Assembly, not a local government. Absent a constitutional infirmity (and we find the City has not shown one), Proviso 1.108 is accorded supremacy and preempts the contrary ordinances of the City. Accordingly, we uphold Proviso 1.108 and declare void the challenged ordinances of the City insofar as they purport to impose a mask mandate in K-12 public schools.

**JUDGMENT DECLARED.**

**FEW and JAMES, JJ., concur. JAMES, J., concurring in a separate opinion. HEARN, J., concurring in result only in a separate opinion, in which BEATTY, C.J., concurs.**

**JUSTICE JAMES:** I wholeheartedly concur with the majority. I write separately to emphasize the limited role of the judiciary in deciding the issues before us.

As the majority states, we are not permitted to weigh in on the policy debate of whether mask mandates are appropriate or inappropriate in schools or elsewhere. Indeed, the parties to this action acknowledged during oral argument that this Court is not called upon to declare what the "right science" is or to declare whether the proviso reflects either sound public health policy or a complete lack of common sense on the part of the General Assembly. It cannot be said enough that we are not permitted to substitute our policy judgment for a constitutional legislative enactment, nor are we permitted to add to or take away from a constitutional legislative enactment. "We do not sit as a superlegislature to second guess the wisdom or folly of decisions of the General Assembly." *Keyserling v. Beasley*, 322 S.C. 83, 86, 470 S.E.2d 100, 101 (1996).

Some oppose mask mandates no matter what the setting, especially for people who have been vaccinated. Some favor mask mandates in all settings, even for people who have been vaccinated. Others fall somewhere in between. Some say masks should be required to protect those who have not been vaccinated or to ward off variants of the original virus. Some say mask mandates are vehicles for virtue-signaling and government overreach. Some say mandates are responsible governance. The list goes on, and everything on the list represents an issue we have no authority to rule upon.

The vast majority of people on all sides of the virus debate want what is best for their loved ones and their communities. They simply disagree with each other and do so respectfully. The exchange of arguments between the Attorney General and the City has been zealous but professional. Oral argument was a pleasure to watch. However, in other settings, respectful and productive public debate has been drowned out by people who cast those with opposing views in pejorative terms too numerous to list. Some leaders—past and present—who publicly advance the need for mask-wearing are seen maskless at large gatherings. Some leaders refuse to endorse any form of mask protection. Some medical professionals cast opposing medical opinions as moronic, deadly, or evil. Most medical professionals calmly and respectfully express their disagreements with opposing opinions. Some speakers against mask mandates scream and curse during public school board meetings; for the most part, school boards treat them respectfully. Social media platforms suspend the posting of views they deem dangerous or misleading but do not acknowledge when those views turn out to be correct. Those who post their views on social media do not acknowledge when those views turn out to be demonstrably wrong. Some teachers and college professors will not tolerate

opposing views expressed in their classrooms. Many television commentators, radio commentators, and bloggers of all ideological persuasions dwell in echo chambers and blow a gasket when discussing mask mandates but at the same time profess to present calm and reasoned opinions on the subject.

These differing viewpoints and the sad state of public debate do not affect our decision-making; actually, they help define the limited role of the judiciary. In spite of the explosion of public opinion on masks and mask mandates and the sometimes unfortunate manner in which these opinions are expressed, our focus and our authority are limited to applying the law. I repeat—it is <u>not</u> within our power to decree which side of the public health debate regarding masks or mask mandates is correct. Likewise, we have no authority to issue a policy decision "in favor of" or "against" mask mandates in schools. We did not do so in *Creswick*,[8] and we do not do so here.

---

[8] *Creswick v. Univ. of S.C.*, Op. No. 28053 (S.C. Sup. Ct. filed Aug. 17, 2021) (Howard Adv. Sh. No. 28 at 32) (per curiam).

**JUSTICE HEARN:** While I wholeheartedly agree with the result, I feel the majority unnecessarily departs from the stated goal of remaining neutral on the policy decisions of both the General Assembly and the City of Columbia (the City).

Our General Assembly, in Proviso 1.108, decided that this year's *appropriated funds* must not be used to implement or enforce a requirement that K-12 students and employees wear a facemask. To be clear, this proviso does not prohibit mask mandates in K-12 schools—counsel for the Attorney General admitted as much at oral argument.

Subsequent to the enactment of Proviso 1.108, the City instituted a conflicting ordinance that does not clearly set forth an enforcement plan that would not invoke funding from the 2021 Appropriations Act. The majority characterizes this conflict as a debate between parental choice and government mandates. Nowhere in the Appropriations Act is the verbiage "parental choice," the Attorney General mentions the concept only once, and yet the majority uses it five times. Neither the Attorney General nor this Court has the authority to create legislative policy. This Court should not, through its language, construct a binary which, in my view, puts an unnecessary political gloss on the issue before the Court.

Some may see the City's actions through this same lens, but still others may view it merely as an earnest attempt to follow health guidelines. Indeed, Justice James correctly identifies these differences by recounting the multitude of views this topic ignites. Regardless of the motivations or how one frames the policy issue, the Court's sole responsibility in this case is to decide whether the City's ordinances conflict with Proviso 1.108, which they unmistakably do.[9] Our responsibility stops there.

Accordingly, I concur in result only.

**BEATTY, C.J., concurs.**

---

[9] Because the ordinances are expressly preempted, it is also unnecessary to reach whether they frustrate the purpose of the proviso.